# SCOTT v. ILLINOIS

No. 77–1177.   Argued December 4, 1978—Decided March 5, 1979

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, and POWELL, JJ., joined. POWELL, J., filed a concurring opinion, *post*, p. 374. BRENNAN, J., filed a dissenting opinion, in which MARSHALL and STEVENS, JJ., joined, *post*, p. 375. BLACKMUN, J., filed a dissenting opinion, *post*, p. 389.

*John S. Elson* argued the cause and filed briefs for petitioner.

*Gerri Papushkewych,* Assistant Attorney General of Illinois, argued the cause for respondent.   With her on the brief were

*William J. Scott,* Attorney General, and *Donald B. Mackay* and *Melbourne A. Noel, Jr.,* Assistant Attorneys General.*

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

We granted certiorari in this case to resolve a conflict among state and lower federal courts regarding the proper application of our decision in *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972).[1] 436 U. S. 925. Petitioner Scott was convicted of theft and fined $50 after a bench trial in the Circuit Court of Cook County, Ill. His conviction was affirmed by the state intermediate appellate court and then by the Supreme Court of Illinois, over Scott's contention that the Sixth and Fourteenth Amendments to the United States Constitution required that Illinois provide trial counsel to him at its expense.

Petitioner Scott was convicted of shoplifting merchandise valued at less than $150. The applicable Illinois statute set the maximum penalty for such an offense at a $500 fine or one year in jail, or both.[2] The petitioner argues that a line of this Court's cases culminating in *Argersinger* v. *Hamlin, supra,* requires state provision of counsel whenever imprisonment is an authorized penalty.

---

*\*Howard B. Eisenberg* filed a brief for the National Legal Aid and Defender Assn. as *amicus curiae* urging reversal.

[1] Compare, *e. g., Potts* v. *Estelle,* 529 F. 2d 450 (CA5 1976); *State ex rel. Winnie* v. *Harris,* 75 Wis. 2d 547, 249 N. W. 2d 791 (1977), with *Sweeten* v. *Sneddon,* 463 F. 2d 713 (CA10 1972); *Rollins* v. *State,* 299 So. 2d 586 (Fla.), cert. denied, 419 U. S. 1009 (1974).

[2] Ill. Rev. Stat., ch. 38, § 16-1 (1969). The penalty provision of the statute, at the time in question, provided in relevant part:

"A person first convicted of theft of property not from the person and not exceeding $150 in value shall be fined not to exceed $500 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both. A person convicted of such theft a second or subsequent time, or after a prior conviction of any type of theft, shall be imprisoned in the penitentiary from one to 5 years. . . ."

The Supreme Court of Illinois rejected this contention, quoting the following language from *Argersinger:*

"We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U. S., at 37.

"Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts." *Id.,* at 40.

The Supreme Court of Illinois went on to state that it was "not inclined to extend *Argersinger*" to the case where a defendant is charged with a statutory offense for which imprisonment upon conviction is authorized but not actually imposed upon the defendant. 68 Ill. 2d 269, 272, 369 N. E. 2d 881, 882 (1977). We agree with the Supreme Court of Illinois that the Federal Constitution does not require a state trial court to appoint counsel for a criminal defendant such as petitioner, and we therefore affirm its judgment.

In his petition for certiorari, petitioner referred to the issue in this case as "the question left open in *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972)." Pet. for Cert. 5. Whether this question was indeed "left open" in *Argersinger* depends upon whether one considers that opinion to be a point in a moving line or a holding that the States are required to go only so far in furnishing counsel to indigent defendants. The Supreme Court of Illinois, in quoting the above language from *Argersinger,* clearly viewed the latter as *Argersinger*'s holding.

Additional support for this proposition may be derived from the concluding paragraph of the opinion in that case:

> "The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of 'the guiding hand of counsel' so necessary where one's liberty is in jeopardy." 407 U. S., at 40.

Petitioner, on the other hand, refers to language in the Court's opinion, responding to the opinion of MR. JUSTICE POWELL, which states that the Court "need not consider the requirements of the Sixth Amendment as regards the right to counsel where loss of liberty is not involved . . . for here petitioner was in fact sentenced to jail." *Id.*, at 37.

There is considerable doubt that the Sixth Amendment itself, as originally drafted by the Framers of the Bill of Rights, contemplated any guarantee other than the right of an accused in a criminal prosecution in a federal court to employ a lawyer to assist in his defense. W. Beaney, The Right to Counsel in American Courts 27–30 (1955). In *Powell* v. *Alabama,* 287 U. S. 45 (1932), the Court held that Alabama was obligated to appoint counsel for the Scottsboro defendants, phrasing the inquiry as "whether the defendants were in substance denied the right of counsel, and if so, whether such denial infringes the due process clause of the Fourteenth Amendment." *Id.*, at 52. It concluded its opinion with the following language:

> "The United States by statute and every state in the Union by express provision of law, or by the determination of its courts, make it the duty of the trial judge, where the accused is unable to employ counsel, to appoint counsel for him. In most states the rule applies broadly to all criminal prosecutions, in others it is limited to the more serious crimes, and in a very limited number, to capital cases. A rule adopted with such unanimous

accord reflects, if it does not establish, the inherent right to have counsel appointed, at least in cases like the present, and lends convincing support to the conclusion we have reached as to the fundamental nature of that right." *Id.*, at 73.

*Betts* v. *Brady,* 316 U. S. 455 (1942), held that not every indigent defendant accused in a state criminal prosecution was entitled to appointment of counsel. A determination had to be made in each individual case whether failure to appoint counsel was a denial of fundamental fairness. *Betts* was in turn overruled in *Gideon* v. *Wainwright,* 372 U. S. 335 (1963). In *Gideon, Betts* was described as holding "that a refusal to appoint counsel for an indigent defendant charged with a felony did not necessarily violate the Due Process Clause of the Fourteenth Amendment . . . ." 372 U. S., at 339.

Several Terms later the Court held in *Duncan* v. *Louisiana,* 391 U. S. 145 (1968), that the right to jury trial in federal court guaranteed by the Sixth Amendment was applicable to the States by virtue of the Fourteenth Amendment. The Court held, however: "It is doubtless true that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision and should not be subject to the Fourteenth Amendment jury trial requirement here applied to the States. Crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses . . . ." *Id.*, at 159 (footnote omitted). In *Baldwin* v. *New York,* 399 U. S. 66, 69 (1970), the controlling opinion of MR. JUSTICE WHITE concluded that "no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized."

In *Argersinger* the State of Florida urged that a similar dichotomy be employed in the right-to-counsel area: Any offense punishable by less than six months in jail should not

require appointment of counsel for an indigent defendant.[3] The *Argersinger* Court rejected this analogy, however, observing that "the right to trial by jury has a different genealogy and is brigaded with a system of trial to a judge alone." 407 U. S., at 29.

The number of separate opinions in *Gideon, Duncan, Baldwin,* and *Argersinger,* suggests that constitutional line drawing becomes more difficult as the reach of the Constitution is extended further, and as efforts are made to transpose lines from one area of Sixth Amendment jurisprudence to another. The process of incorporation creates special difficulties, for the state and federal contexts are often different and application of the same principle may have ramifications distinct in degree and kind. The range of human conduct regulated by state criminal laws is much broader than that of the federal criminal laws, particularly on the "petty" offense part of the spectrum. As a matter of constitutional adjudication, we are, therefore, less willing to extrapolate an already extended line when, although the general nature of the principle sought to be applied is clear, its precise limits and their ramifications become less so. We have now in our decided cases departed from the literal meaning of the Sixth Amendment. And we cannot fall back on the common law as it existed prior to the enactment of that Amendment, since it perversely gave less in the way of right to counsel to accused felons than to those accused of misdemeanors. See *Powell* v. *Alabama, supra,* at 60.

In *Argersinger* the Court rejected arguments that social cost or a lack of available lawyers militated against its holding, in some part because it thought these arguments were factually incorrect. 407 U. S., at 37 n. 7. But they were rejected in much larger part because of the Court's conclusion that incarceration was so severe a sanction that it should not be imposed as a result of a criminal trial unless an indigent

---

[3] Brief for Respondent in *Argersinger* v. *Hamlin,* O. T. 1971, No. 70-5015, p. 12.

defendant had been offered appointed counsel to assist in his defense, regardless of the cost to the States implicit in such a rule. The Court in its opinion repeatedly referred to trials "where an accused is deprived of his liberty," *id.*, at 32, and to "a case that actually leads to imprisonment even for a brief period," *id.*, at 33. THE CHIEF JUSTICE in his opinion concurring in the result also observed that "any deprivation of liberty is a serious matter." *Id.*, at 41.

Although the intentions of the *Argersinger* Court are not unmistakably clear from its opinion, we conclude today that *Argersinger* did indeed delimit the constitutional right to appointed counsel in state criminal proceedings.[4] Even were the matter *res nova,* we believe that the central premise of *Argersinger*—that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment— is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel. *Argersinger* has proved reasonably workable, whereas any extension would create confusion and impose unpredictable, but necessarily substantial, costs on 50 quite diverse States.[5] We therefore hold that the Sixth

---

[4] We note that the line drawn in *Argersinger* was with full awareness of the various options. Both the petitioner in that case and the Legal Aid Society of New York, as *amicus curiae,* argued that the right to appointed counsel should pertain in any case in which imprisonment was an authorized penalty for the underlying offense. Brief for Petitioner in *Argersinger* v. *Hamlin,* O. T. 1971, No. 70–5015, p. 4; Brief for Legal Aid Society of New York as *Amicus Curiae* in *Argersinger* v. *Hamlin* 5–11. Respondent Florida and the *amici* States urged that the line be drawn as it had been in *Baldwin* for purposes of the jury trial guarantee. See, *e. g.,* Brief for Respondent in *Argersinger* v. *Hamlin* 12. The Solicitor General argued for the standard that was finally adopted—that of actual imprisonment. Brief for United States as *Amicus Curiae* in *Argersinger* v. *Hamlin* 22–24.

[5] Unfortunately, extensive empirical work has not been done. That which exists suggests that the requirements of *Argersinger* have not proved to be unduly burdensome. See, *e. g.,* Ingraham, The Impact of Argersinger—One Year Later, 8 Law & Soc. Rev. 615 (1974). That some

and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense. The judgment of the Supreme Court of Illinois is accordingly

*Affirmed.*

MR. JUSTICE POWELL, concurring.

For the reasons stated in my opinion in *Argersinger* v. *Hamlin*, 407 U. S. 25, 44 (1972), I do not think the rule adopted by the Court in that case is required by the Constitution. Moreover, the drawing of a line based on whether there is imprisonment (even for overnight) can have the practical effect of precluding provision of counsel in other types of cases in which conviction can have more serious consequences. The *Argersinger* rule also tends to impair the proper functioning of the criminal justice system in that trial judges, in advance of hearing any evidence and before knowing anything about the case except the charge, all too often will be compelled to forgo the legislatively granted option to impose a sentence of imprisonment upon conviction. Preserving this option by providing counsel often will be impossible or impracticable—particularly in congested urban courts where scores of cases are heard in a single sitting, and in small and rural communities where lawyers may not be available.

Despite my continuing reservations about the *Argersinger* rule, it was approved by the Court in the 1972 opinion and four Justices have reaffirmed it today. It is important that this Court provide clear guidance to the hundreds of courts across the country that confront this problem daily. Accordingly, and mindful of *stare decisis,* I join the opinion of the

---

jurisdictions have had difficulty implementing *Argersinger* is certainly not an argument for extending it. S. Krantz, C. Smith, D. Rossman, P. Froyd & J. Hoffman, Right to Counsel in Criminal Cases 1–18 (1976).

Court. I do so, however, with the hope that in due time a majority will recognize that a more flexible rule is consistent with due process and will better serve the cause of justice.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL and MR. JUSTICE STEVENS join, dissenting.

The Sixth Amendment provides: "In *all criminal* prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." (Emphasis supplied.) *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), extended the Sixth Amendment right to counsel to the States through the Fourteenth Amendment and held that the right includes the right of the indigent to have counsel provided. *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972), held that the right recognized in *Gideon* extends to the trial of any offense for which a convicted defendant is likely to be incarcerated.

This case presents the question whether the right to counsel extends to a person accused of an offense that, although punishable by incarceration, is actually punished only by a fine. Petitioner Aubrey Scott was charged with theft in violation of Ill. Rev. Stat., ch. 38, § 16–1 (1969), an offense punishable by imprisonment for up to one year or by a fine of up to $500, or by both. About four months before *Argersinger* was decided, Scott had a bench trial, without counsel, and without notice of entitlement to retain counsel or, if indigent,[1] to have counsel provided. He was found guilty as charged and sentenced to pay a $50 fine.

The Court, in an opinion that at best ignores the basic principles of prior decisions, affirms Scott's conviction without

---

[1] Scott was found to be indigent at the time of his initial appeal, and an attorney was therefore appointed for him and he was provided a free transcript of his trial for use on the appeal. The Illinois courts and the parties have assumed his indigency at the time of trial for purposes of this case. See 68 Ill. 2d 269, 270–272, 369 N. E. 2d 881, 881–882 (1977); 36 Ill. App. 3d 304, 307–308, 343 N. E. 2d 517, 520 (1976).

counsel because he was sentenced only to pay a fine. In my view, the plain wording of the Sixth Amendment and the Court's precedents compel the conclusion that Scott's uncounseled conviction violated the Sixth and Fourteenth Amendments and should be reversed.

I

The Court's opinion intimates that the Court's precedents ordaining the right to appointed counsel for indigent accuseds in state criminal proceedings fail to provide a principled basis for deciding this case. That is demonstrably not so. The principles developed in the relevant precedents are clear and sound. The Court simply chooses to ignore them.

*Gideon* v. *Wainwright* held that, because representation by counsel in a criminal proceeding is "fundamental and essential to a fair trial," 372 U. S., at 342, the Sixth Amendment right to counsel was applicable to the States through the Fourteenth Amendment:

> "[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed

fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." *Id.,* at 344.

Earlier precedents had recognized that the assistance of appointed counsel was critical, not only to equalize the sides in an adversary criminal process,[2] but also to give substance to other constitutional and procedural protections afforded criminal defendants.[3] *Gideon* established the right to appointed counsel for indigent accuseds as a categorical

---

[2] "[The Sixth Amendment] embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer, to the untrained layman may appear intricate, complex and mysterious." *Johnson* v. *Zerbst,* 304 U. S. 458, 462–463 (1938).

[3] "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect." *Powell* v. *Alabama,* 287 U. S. 45, 68–69 (1932).

requirement, making the Court's former case-by-case due process analysis, cf. *Betts* v. *Brady,* 316 U. S. 455 (1942), unnecessary in cases covered by its holding. *Gideon* involved a felony prosecution, but that fact was not crucial to the decision; its reasoning extended, in the words of the Sixth Amendment, to *"all* criminal prosecutions." [4]

*Argersinger* v. *Hamlin* took a cautious approach toward implementing the logical consequences of *Gideon's* rationale. The petitioner in *Argersinger* had been sentenced to jail for 90 days after conviction—at a trial without counsel—of carrying a concealed weapon, a Florida offense carrying an authorized penalty of imprisonment for up to six months and a fine of up to $1,000. The State, relying on *Duncan* v. *Louisiana,* 391 U. S. 145 (1968), and *Baldwin* v. *New York,* 399 U. S. 66 (1970), urged that the Sixth Amendment right to counsel, like the right to jury trial, should not apply to accuseds charged with "petty" offenses punishable by less than six months' imprisonment. But *Argersinger* refused to extend the "petty" offense limitation to the right to counsel. The Court pointed out that the limitation was contrary to the express words of the Sixth Amendment, which guarantee its enumerated rights "[i]n all criminal prosecutions"; that the right to jury trial was the only Sixth Amendment right applicable to the States that had been held inapplicable to "petty offenses"; [5] that this

---

[4] See *Argersinger* v. *Hamlin,* 407 U. S. 25, 31 (1972).

[5] " 'It is simply not arguable, nor has any court ever held, that the trial of a petty offense may be held in secret, or without notice to the accused of the charges, or that in such cases the defendant has no right to confront his accusers or to compel the attendance of witnesses in his own behalf.' " *Id.,* at 28, quoting Junker, The Right to Counsel in Misdemeanor Cases, 43 Wash. L. Rev. 685, 705 (1968). Cf. *In re Oliver,* 333 U. S. 257 (1948) (right to a public trial); *Pointer* v. *Texas,* 380 U. S. 400 (1965) (right to confrontation); *Klopfer* v. *North Carolina,* 386 U. S. 213 (1967) (right to a speedy trial); *Washington* v. *Texas,* 388 U. S. 14 (1967) (right to compulsory process of witnesses); *Groppi* v. *Wisconsin,* 400 U. S. 505 (1971) (right to an impartial jury).

limitation had been based on historical considerations peculiar to the right to jury trial;[6] and that the right to counsel was more fundamentally related to the fairness of criminal prosecutions than the right to jury trial and was in fact essential to the meaningful exercise of other Sixth Amendment protections.[7]

Although its analysis, like that in *Gideon* and other earlier cases, suggested that the Sixth Amendment right to counsel should apply to all state criminal prosecutions, *Argersinger* held only that an indigent defendant is entitled to appointed counsel, even in petty offenses punishable by six months of incarceration or less, if he is likely to be sentenced to incarceration for any time if convicted. The question of the right to counsel in cases in which incarceration was authorized but would not be imposed was expressly reserved.[8]

## II

In my view petitioner could prevail in this case without extending the right to counsel beyond what was assumed to exist in *Argersinger*. Neither party in that case questioned

---

[6] "While there is historical support for limiting the 'deep commitment' to trial by jury to 'serious criminal cases,' there is no such support for a similar limitation on the right to assistance of counsel . . . .

.           .           .           .           .

"The Sixth Amendment . . . extended the right to counsel beyond its common-law dimensions. But there is nothing in the language of the Amendment, its history, or in the decisions of this Court, to indicate that it was intended to embody a retraction of the right in petty offenses wherein the common law previously did require that counsel be provided." *Argersinger* v. *Hamlin,* 407 U. S., at 30 (footnote and citations omitted).

[7] *Id.,* at 31; see *supra,* at 377, and n. 3.

[8] "MR. JUSTICE POWELL suggests that these problems [requiring the presence of counsel to insure the accused a fair trial] are raised even in situations where there is no prospect of imprisonment. . . . We need not consider the requirements of the Sixth Amendment as regards the right to counsel where loss of liberty is not involved, however, for here petitioner was in fact sentenced to jail." 407 U. S., at 37.

the existence of the right to counsel in trials involving "non-petty" offenses punishable by more than six months in jail.[9] The question the Court addressed was whether the right applied to some "petty" offenses to which the right to jury trial did not extend. The Court's reasoning in applying the right to counsel in the case before it—that the right to counsel is more fundamental to a fair proceeding than the right to jury trial and that the historical limitations on the jury trial right are irrelevant to the right to counsel—certainly cannot support a standard for the right to counsel that is more restrictive than the standard for granting a right to jury trial. As my Brother POWELL commented in his opinion concurring in the result in *Argersinger,* 407 U. S., at 45–46: "It is clear that wherever the right-to-counsel line is to be drawn, it must be drawn so that an indigent has a right to appointed counsel in all cases in which there is a due process right to a jury trial." *Argersinger* thus established a "two dimensional" test for the right to counsel: the right attaches to any "nonpetty" offense punishable by more than six months in jail and in addition to any offense where actual incarceration is likely regardless of the maximum authorized penalty. See Duke, The Right to Appointed Counsel: *Argersinger* and Beyond, 12 Am. Crim. L. Rev. 601 (1975).

The offense of "theft" with which Scott was charged is certainly not a "petty" one. It is punishable by a sentence of up to one year in jail. Unlike many traffic or other "regulatory" offenses, it carries the moral stigma associated with common-law crimes traditionally recognized as indicative of moral depravity.[10] The State indicated at oral argument that the

---

[9] See, *e. g., id.,* at 27, 30–31, 36, and n. 5; *id.,* at 45, and n. 2, 63 (POWELL, J., concurring in result).

[10] Because a theft conviction implies dishonesty, it may be a basis for impeaching petitioner's testimony in a court proceeding. *People* v. *Stufflebean,* 24 Ill. App. 3d 1065, 1068–1169, 322 N. E. 2d 488, 491–492 (1974). Because jurors must be of "fair character" and "approved integrity," Ill. Rev. Stat., ch. 78, § 2 (1975), petitioner may be excluded

services of a professional prosecutor were considered essential to the prosecution of this offense. Tr. of Oral Arg. 39; cf. *Argersinger* v. *Hamlin,* 407 U. S., at 49 (POWELL, J., concurring in result). Likewise, nonindigent defendants charged with this offense would be well advised to hire the "best lawyers they can get." [11] Scott's right to the assistance of appointed counsel is thus plainly mandated by the logic of the Court's prior cases, including *Argersinger* itself.[12]

## III

But rather than decide consonant with the assumption in regard to nonpetty offenses that was both implicit and explicit

---

from jury duty as a result of his theft conviction. Twelve occupations licensed under Illinois law and 23 occupations licensed under city of Chicago ordinances require the license applicant to have "good moral character" or some equivalent background qualification that could be found unsatisfied because of a theft conviction. See Chicago Council of Lawyers, Study of Licensing Restrictions on Ex-Offenders in the City of Chicago and the State of Illinois 8, A–17 (1975). Under federal law petitioner's theft conviction would bar him from working in any capacity in a bank insured by the Federal Deposit Insurance Corporation, 12 U. S. C. § 1829, or possibly in any public or private employment requiring a security clearance. 32 CFR §§ 155.5 (h) and (i), and 156.7 (b) (1) (iii) (1977).

[11] *Gideon* v. *Wainwright,* 372 U. S. 335, 344 (1963); see Junker, *supra* n. 5, at 713–714.

[12] My Brother POWELL's concurrence in *Argersinger,* 407 U. S., at 44, joined by my Brother REHNQUIST, also supports petitioner's right to appointed counsel in this case. The concurrence explicitly stated that the right to counsel should extend at least as far as the right to jury trial, *id.,* at 45–46, and its preference for a case-by-case approach was repeatedly limited to "petty" offenses. See, *e. g., id.,* at 45, and n. 2, 47, 63. Even in petty offenses, the *Argersinger* concurrence would have mandated the following procedures:

"The determination [whether counsel must be appointed] should be made before the accused formally pleads; many petty cases are resolved by guilty pleas in which the assistance of counsel may be required. If the trial court should conclude that the assistance of counsel is not required in any case, it should state its reasons so that the issue could be preserved for review." *Id.,* at 63.

in *Argersinger,* the Court today retreats to the indefensible position that the *Argersinger* "actual imprisonment" standard is the *only* test for determining the boundary of the Sixth Amendment right to appointed counsel in state misdemeanor cases, thus necessarily deciding that in many cases (such as this one) a defendant will have no right to appointed counsel even when he has a constitutional right to a jury trial. This is simply an intolerable result. Not only is the "actual imprisonment" standard unprecedented as the exclusive test, but also the problems inherent in its application demonstrate the superiority of an "authorized imprisonment" standard that would require the appointment of counsel for indigents accused of any offense for which imprisonment for any time is authorized.

First, the "authorized imprisonment" standard more faithfully implements the principles of the Sixth Amendment identified in *Gideon.* The procedural rules established by state statutes are geared to the nature of the potential penalty for an offense, not to the actual penalty imposed in particular cases. The authorized penalty is also a better predictor of the stigma and other collateral consequences that attach to conviction of an offense.[13] With the exception of *Argersinger,* authorized penalties have been used consistently by this Court as the true measures of the seriousness of offenses. See, *e. g., Baldwin* v. *New York,* 399 U. S., at 68–70; *Frank* v. *United States,* 395 U. S. 147, 149 (1969); *United States* v. *Moreland,* 258 U. S. 433 (1922). Imprisonment is a sanction particularly associated with criminal offenses; trials of offenses punishable by imprisonment accordingly possess the characteris-

---

[13] See n. 10, *supra.* The scope of collateral consequences that would be constitutionally permissible under the "actual imprisonment" standard remains unsettled, and this uncertainty is another source of confusion generated by this standard. See, *e. g.,* Tr. of Oral Arg. 35–37; *United States* v. *White,* 529 F. 2d 1390 (CA8 1976); Note, Argersinger v. Hamlin and the Collateral Use of Prior Misdemeanor Convictions of Indigents Unrepresented by Counsel at Trial, 35 Ohio St. L. J. 168 (1974).

tics found by *Gideon* to require the appointment of counsel. By contrast, the "actual imprisonment" standard, as the Court's opinion in this case demonstrates, denies the right to counsel in criminal prosecutions to accuseds who suffer the severe consequences of prosecution other than imprisonment.

Second, the "authorized imprisonment" test presents no problems of administration. It avoids the necessity for time-consuming consideration of the likely sentence in each individual case before trial and the attendant problems of inaccurate predictions, unequal treatment, and apparent and actual bias. These problems with the "actual imprisonment" standard were suggested in my Brother POWELL's concurrence in *Argersinger*, 407 U. S., at 52–55, which was echoed in scholarly criticism of that decision.[14] Petitioner emphasizes these defects, arguing with considerable force that implementation of the "actual imprisonment" standard must assuredly lead to violations of both the Due Process and Equal Protection Clauses of the Constitution. Brief for Petitioner 47–59.

Finally, the "authorized imprisonment" test ensures that courts will not abrogate legislative judgments concerning the appropriate range of penalties to be considered for each offense. Under the "actual imprisonment" standard,

> "[t]he judge will . . . be forced to decide in advance of trial—and without hearing the evidence—whether he will forgo entirely his judicial discretion to impose some sentence of imprisonment and abandon his responsibility to consider the full range of punishments established by the legislature. His alternatives, assuming the availability

---

[14] See, *e. g.*, S. Krantz, C. Smith, D. Rossman, P. Froyd & J. Hoffman, Right to Counsel in Criminal Cases: The Mandate of *Argersinger v. Hamlin* 69–117 (1976); Duke, The Right to Appointed Counsel: *Argersinger* and Beyond, 12 Am. Crim. L. Rev. 601 (1975).

The case-by-case approach advocated by my Brother POWELL in *Argersinger* has also been criticized as unworkable because of the administrative burden it would impose. See, *e. g.*, Uniform Rules of Criminal Procedure, Rule 321 (b), Comment, 10 U. L. A. 69 (1974).

of counsel, will be to appoint counsel and retain the discretion vested in him by law, or to abandon this discretion in advance and proceed without counsel." *Argersinger* v. *Hamlin, supra,* at 53 (POWELL, J., concurring in result).

The "authorized imprisonment" standard, on the other hand, respects the allocation of functions between legislatures and courts in the administration of the criminal justice system.

The apparent reason for the Court's adoption of the "actual imprisonment" standard for all misdemeanors is concern for the economic burden that an "authorized imprisonment" standard might place on the States. But, with all respect, that concern is both irrelevant and speculative.

This Court's role in enforcing constitutional guarantees for criminal defendants cannot be made dependent on the budgetary decisions of state governments. A unanimous Court made that clear in *Mayer* v. *Chicago,* 404 U. S. 189, 196–197 (1971), in rejecting a proposed fiscal justification for providing free transcripts for appeals only when the appellant was subject to imprisonment:

> "This argument misconceives the principle of *Griffin* [v. *Illinois,* 351 U. S. 12 (1956)] . . . . *Griffin* does not represent a balance between the needs of the accused and the interests of society; its principle is a flat prohibition against pricing indigent defendants out of as effective an appeal as would be available to others able to pay their own way. The invidiousness of the discrimination that exists when criminal procedures are made available only to those who can pay is not erased by any differences in the sentences that may be imposed. The State's fiscal interest is, therefore, irrelevant." [15]

In any event, the extent of the alleged burden on the States is, as the Court admits, *ante,* at 373–374, n. 5, speculative. Al-

---

[15] See also *Bounds* v. *Smith,* 430 U. S. 817, 825 (1977).

though more persons are charged with misdemeanors punishable by incarceration than are charged with felonies, a smaller percentage of persons charged with misdemeanors qualify as indigent, and misdemeanor cases as a rule require far less attorney time.[16]

Furthermore, public defender systems have proved economically feasible, and the establishment of such systems to replace appointment of private attorneys can keep costs at acceptable levels even when the number of cases requiring appointment of counsel increases dramatically.[17] The public defender system alternative also answers the argument that an "authorized imprisonment" standard would clog the courts with inexperienced appointed counsel.

Perhaps the strongest refutation of respondent's alarmist prophecies that an "authorized imprisonment" standard would wreak havoc on the States is that the standard has not produced that result in the substantial number of States that already provide counsel in all cases where imprisonment is

---

[16] See Uniform Rules of Criminal Procedure, Rule 321 (b), Comment, 10 U. L. A. 70 (1974) (estimates that only 10% of misdemeanor defendants, as opposed to 60%–65% of felony defendants, meet the necessary indigency standard); National Legal Aid and Defender Assn., The Other Face of Justice, Note I, pp. 82–83 (1973) (survey indicates national average is 65% indigency in felony cases and only 47% in misdemeanor cases).

The National Advisory Commission on Criminal Justice Standards and Goals adopted a maximum caseload standard of 150 felony cases or 400 misdemeanor cases per attorney per year. National Advisory Commission on Criminal Justice Standards and Goals, Courts, Standard 13.12, pp. 276–277 (1973). See also The Other Face of Justice, *supra*, Table 109, p. 73.

[17] A study conducted in the State of Wisconsin, which introduced a State Public Defender System after the Wisconsin Supreme Court in *State ex rel. Winnie* v. *Harris*, 75 Wis. 2d 547, 249 N. W. 2d 791 (1977), extended the right to counsel in the way urged by petitioner in this case, indicated that the average cost of providing counsel in a misdemeanor case was reduced from $150–$200 to $90 by using a public defender rather than appointing private counsel. Brief for National Legal Aid and Defender Assn. as *Amicus Curiae* 10–12.

authorized—States that include a large majority of the country's population and a great diversity of urban and rural environments.[18] Moreover, of those States that do not yet

[18] See, e. g., Alaska: Alaska Const., Art. 1, § 11; Alaska Stat. Ann. § 18.85.100 (1974) (any offense punishable by incarceration; or which may result in loss of valuable license or heavy fine); *Alexander* v. *Anchorage*, 490 P. 2d 910 (Alaska 1971); Arizona: Ariz. Rule Crim. Proc. 6.1 (b) (any criminal proceedings which may result in punishment by loss of liberty; or where the court concludes that the interest of justice so requires); California: Cal. Penal Code Ann. § 987 (West Supp. 1978) (all criminal cases); Connecticut: Conn. Gen. Stat. §§ 51–296 (a), 51–297 (f) (1979) (all criminal actions); Delaware: Del. Code Ann., Tit. 29, § 4602 (1974) (all indigents under arrest or charged with crime if defendant requests or court orders); Hawaii: Haw. Rev. Stat. § 802–1 (1976) (any offense punishable by confinement in jail); Indiana: Ind. Const., Art. I, § 13 (all criminal prosecutions); *Bolkovac* v. *State*, 229 Ind. 294, 98 N. E. 2d 250 (1951); Kentucky: Ky. Rule Crim. Proc. 8.04 (offenses punishable by a fine of more than $500 or by imprisonment); Louisiana: La. Code Crim. Proc., Art. 513 (West Supp. 1978) (offenses punishable by imprisonment); Massachusetts: Mass. Sup. Jud. Ct. Rule 3:10 (any crime for which sentence of imprisonment may be imposed); Minnesota: Minn. Stat. §§ 609.02, 611.14 (1978) (felonies and "gross misdemeanors"; statute defines "petty" misdemeanors as those not punishable by imprisonment or fine over $100); New Hampshire: N. H. Rev. Stat. Ann. §§ 604–A:2, 625:9 (1974 and Supp. 1977) (offenses punishable by imprisonment); New Mexico: N. M. Stat. Ann. § 41–22A–12 (Supp. 1975) (offense carrying a possible sentence of imprisonment); New York: N. Y. Crim. Proc. Law § 170.10 (3) (McKinney 1971) (all misdemeanors except traffic violations); *People* v. *Weinstock*, 80 Misc. 2d 510, 363 N. Y. S. 2d 878 (1974) (traffic violations subject to possible imprisonment); Oklahoma: Okla. Stat., Tit. 22, § 464 (1969) (all criminal cases); *Stewart* v. *State*, 495 P. 2d 834 (Crim. App. 1972); Oregon: *Brown* v. *Multnomah County Dist. Ct.*, 29 Ore. App. 917, 566 P. 2d 522 (1977) (all criminal cases); South Dakota: S. D. Comp. Laws Ann. § 23–2–1 (Supp. 1978) (any criminal action); Tennessee: Tenn. Code Ann. §§ 40–2002, 40–2003 (1975) (persons accused of any crime or misdemeanor whatsoever); Texas: Tex. Code Crim. Proc. Ann., Art. 26.04 (Vernon 1966) (any felony or misdemeanor punishable by imprisonment); Virginia: Va. Code §§ 19.2–157, 19.2–160 (Supp. 1978) (misdemeanors the penalty for which may be confinement in jail); Washington: Wash. Justice Court Crim. Rule 2.11 (a)(1) (all criminal offenses punishable by loss of liberty); West Virginia: W. Va. Code

provide counsel in all cases where *any* imprisonment is authorized, many provide counsel when periods of imprisonment longer than 30 days,[19] 3 months,[20] or 6 months [21] are author-

§ 62–3–1a (1977) (persons under indictment for a crime); Wisconsin: Wis. Const., Art. I, § 7; *State ex rel. Winnie* v. *Harris*, 75 Wis. 2d 547, 249 N. W. 2d 791 (1977) (all offenses punishable by incarceration).

Respondent claims that the statutes and case law in some of these States "need not be read as requiring appointment of counsel for all imprisonable cases." Brief for Respondent 33 n. 28. Although the law is not unambiguous in every case, ambiguities in the laws of other States suggest that the list is perhaps too short, or at least that other States provide counsel in all but the most trivial offenses. *E. g.*, Colorado: Colo. Rev. Stat. § 21–1–103 (1973) (all misdemeanors and all municipal code violations at the discretion of the public defender); Georgia: Ga. Code § 27–3203 (1978) (any violation of a state law or local ordinance which may result in incarceraton); Missouri: Mo. Op. Atty. Gen. No. 207 (1963) (counsel should be appointed in misdemeanor cases of "more than minor significance" and "when prejudice might result"); Montana: Mont. Rev. Codes Ann. § 95–1001 (1969) (court may assign counsel in misdemeanors "in the interest of justice"); Nevada: Nev. Rev. Stat. § 178.397 (1977) (persons accused of "gross misdemeanors" or felonies); New Jersey: N. J. Stat. Ann. § 2A:158A–2 (West 1971); N. J. Crim. Rule 3:27–1 (any offense which is indictable); Pennsylvania: Pa. Rules Crim. Proc. 316 (a)–(c) (in all but "summary cases"); Wyoming: Wyo. Stat. §§ 7–1–110 (a) (entitled to appointed counsel in "serious crimes"), 7–1–108 (a)(v) (serious crimes are those for which incarceration is a "practical possibility"), 7–9–105 (all cases where accused shall or may be punished by imprisonment in penitentiary) (1977).

In addition, Alabama, Florida, Georgia, and Mississippi were until today covered by the Fifth Circuit's adoption of the "authorized imprisonment" standard. See *Potts* v. *Estelle*, 529 F. 2d 450 (CA5 1976); *Thomas* v. *Savage*, 513 F. 2d 536 (CA5 1975).

Several States that have not adopted the "authorized imprisonment" standard give courts discretionary authority to appoint counsel in cases where it is perceived to be necessary (*e. g.*, Maryland, Missouri, Montana, North Dakota, Ohio, and Pennsylvania).

[19] Iowa: Iowa Rules Crim. Proc. 2, § 3; 42, § 3.

[20] Maryland: Md. Ann. Code, Art. 27A, §§ 2 (f) and (h), 4 (1976); Mississippi: Miss. Code Ann. § 99–15–15 (1972).

[21] Idaho: Idaho Code § 19–851 (Supp. 1978); *Mahler* v. *Birnbaum*, 95 Idaho 14, 501 P. 2d 282 (1972); Maine: *Newell* v. *State*, 277 A. 2d 731

ized. In fact, Scott would be entitled to appointed counsel under the current laws of at least 33 States.[22]

It may well be that adoption by this Court of an "authorized imprisonment" standard would lead state and local governments to re-examine their criminal statutes. A state legislature or local government might determine that it no longer desired to authorize incarceration for certain minor offenses in light of the expense of meeting the requirements of the Constitution. In my view this re-examination is long overdue.[23] In any

---

(1971); Ohio: Ohio Rules Crim. Proc. 2, 44 (A) and (B); Rhode Island: R. I. Rule Crim. Proc. 44 (Super. Ct.); R. I. Rule Crim. Proc. 44 (Dist. Ct.); *State* v. *Holliday,* 109 R. I. 93, 280 A. 2d 333 (1971); Utah: Utah Code Ann. § 77–64–2 (1978); *Salt Lake City Corp.* v. *Salt Lake County,* 520 P. 2d 211 (1974).

[22] See nn. 18–21, *supra.* The actual figure may be closer to 40 States. The following States appear to be governed only by the "likelihood of imprisonment" standard: Arkansas: Ark. Rule Crim. Proc. 8.2 (b) (all criminal offenses except in misdemeanor cases where court determines that under no circumstances will conviction result in imprisonment); Florida: Fla. Rule Crim. Proc. 3.111 (b) (any misdemeanor or municipal ordinance violation unless prior written statement by judge that conviction will not result in imprisonment); North Carolina: N. C. Gen. Stat. § 7A–451 (a) (Supp. 1977) (any case in which imprisonment or a fine of $500 or more is likely to be adjudged); North Dakota: N. D. Rule Crim. Proc. 44 (all nonfelony cases unless magistrate determines that sentence upon conviction will not include imprisonment); Vermont: Vt. Stat. Ann., Tit. 13, §§ 5201, 5231 (1974 and Supp. 1977) (any misdemeanor punishable by any period of imprisonment or fine over $1,000 unless prior determination that imprisonment or fine over $1,000 will not be imposed). Two States require appointment of counsel for indigents in cases where it is "constitutionally required": Alabama: Ala. Code §§ 15–12–1, 15–12–20 (1975); South Carolina: S. C. Code § 17–3–10 (Supp. 1977). Some States require counsel in misdemeanor cases only by virtue of judicial decisions reacting to *Argersinger:* Kansas: *State* v. *Giddings,* 216 Kan. 14, 531 P. 2d 445 (1975); Michigan: *People* v. *Studaker,* 387 Mich. 698, 199 N. W. 2d 177 (1972); *People* v. *Harris,* 45 Mich. App. 217, 206 N. W. 2d 478 (1973); Nebraska: *Kovarik* v. *County of Banner,* 192 Neb. 816, 224 N. W. 2d 761 (1975).

[23] See, *e. g.,* Krantz et al., *supra* n. 14, at 445–606.

event, the Court's "actual imprisonment" standard must inevitably lead the courts to make this re-examination, which plainly should more properly be a legislative responsibility.

## IV

The Court's opinion turns the reasoning of *Argersinger* on its head. It restricts the right to counsel, perhaps the most fundamental Sixth Amendment right,[24] more narrowly than the admittedly less fundamental right to jury trial.[25] The abstract pretext that "constitutional line drawing becomes more difficult as the reach of the Constitution is extended further, and as efforts are made to transpose lines from one area of Sixth Amendment jurisprudence to another," *ante,* at 372, cannot camouflage the anomalous result the Court reaches. Today's decision reminds one of Mr. Justice Black's description of *Betts* v. *Brady:* "an anachronism when handed down" that "ma[kes] an abrupt break with its own well-considered precedents." *Gideon* v. *Wainwright,* 372 U. S., at 345, 344.

MR. JUSTICE BLACKMUN, dissenting.

For substantially the reasons stated by MR. JUSTICE BRENNAN in Parts I and II of his dissenting opinion, I would hold that the right to counsel secured by the Sixth and Fourteenth Amendments extends at least as far as the right to jury trial secured by those Amendments. Accordingly, I would hold that an indigent defendant in a state criminal case must be afforded appointed counsel whenever the defendant is prose-

---

[24] "In an adversary system of criminal justice, there is no right more essential than the right to the assistance of counsel." *Lakeside* v. *Oregon,* 435 U. S. 333, 341 (1978).

[25] "[T]he interest protected by the right to have guilt or innocence determined by a jury—tempering the possibly arbitrary and harsh exercise of prosecutorial and judicial power—while important, is not as fundamental to the guarantee of a fair trial as is the right to counsel." *Argersinger* v. *Hamlin,* 407 U. S., at 46 (POWELL, J., concurring in result) (footnotes omitted).

cuted for a nonpetty criminal offense, that is, one punishable by more than six months' imprisonment, see *Duncan* v. *Louisiana,* 391 U. S. 145 (1968); *Baldwin* v. *New York,* 399 U. S. 66 (1970), *or* whenever the defendant is convicted of an offense and is actually subjected to a term of imprisonment, *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972).

This resolution, I feel, would provide the "bright line" that defendants, prosecutors, and trial and appellate courts all deserve and, at the same time, would reconcile on a principled basis the important considerations that led to the decisions in *Duncan, Baldwin,* and *Argersinger.*

On this approach, of course, the judgment of the Supreme Court of Illinois upholding petitioner Scott's conviction should be reversed, since he was convicted of an offense for which he was constitutionally entitled to a jury trial. I, therefore, dissent.