[Cite as *State v. Williams*, 2012-Ohio-725.]

IN THE COURT OF APPEALS OF GREENE COUNTY, OHIO

STATE OF OHIO                      :

    Plaintiff-Appellee         :     C.A. CASE NO. 2011CA18

vs.                                :     T.C. CASE NO. 2010TRD7164

ANTHONY WILLIAMS                   :     (Criminal Appeal from
                                         Municipal Court)
    Defendant-Appellant        :

. . . . . . . . .

## O P I N I O N

Rendered on the 24th day of February, 2012.

. . . . . . . . .

Ronald Lewis, Atty. Reg. No. 0061980, Law Department, 101 N. Detroit Street, Xenia, OH 45385
    Attorney for Plaintiff-Appellee

Anthony Williams, 535 E. Church Street, Xenia, OH 45385
    Defendant-Appellant, Pro Se

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Anthony Williams, appeals from his conviction and sentence for speeding.

{¶ 2} Defendant was charged by traffic citation filed in Xenia Municipal Court with speeding, 87 in a 65 m.p.h. zone, in violation of R.C. 4511.21(D)(2), a minor misdemeanor. Following a bench trial on February 23, 2011, the trial court found Defendant guilty of

speeding as charged.  The trial court fined Defendant one hundred dollars plus court costs. The court also suspended Defendant's driver's license for six months on a finding of recklessness, which resulted from Defendant driving twenty-two miles per hour over the speed limit and changing lanes to pass at least five other vehicles.

{¶ 3}   The trier of facts in this case, the trial court, found the following facts from the evidence presented at Defendant's trial:

{¶ 4} The court finds that on November 27, 2010 at about 1429 hours, which I believe would be about 2:29 in the afternoon, on 675 southbound in Sugarcreek Township, Greene County, Ohio, which is in the jurisdiction of this Court, Troop – Sergeant Lumpcik and Trooper slash Pilot Cromer were both in uniforms of the day.  The sergeant was in a marked cruiser.  Trooper Cromer was in an airplane which has some state patrol insignia to it.

{¶ 5} Trooper Cromer was working an air speed zone, I believe is the exact words he used, on 675 in the jurisdiction of this Court.  He himself measured the white lines which marked the air speed zone.  They are at least thirteen hundred twenty feet apart, a quarter of a mile.  He checked those both by a rolling tape and by having other cruisers pass through that zone.  He would time them and then verify their speed to make sure that both the lines and his timing device, stopwatch, was accurately recording time and math function.  Before and after his shift that day he calibrated his timing devices by the atomic clock through Boulder, Colorado.

{¶ 6} And he observed a vehicle which on Defendant's Exhibit A is

marked as blue. There is a parenthesis of green. He observed a blue vehicle that may have had a green tint to it. The trooper testified that at twenty-five hundred feet there can be some variations in color.

{¶ 7} He followed that vehicle through four of the speed zones, four of the quarter miles. He had readings of 87, 86, 85 and 83 in a posted 65 mile an hour zone. The trooper radioed Sergeant Lumpcik who was on the ground. Trooper Cromer maintained visual contact with that vehicle. There were no clouds or impediments at his height. There was reported overcast above him; but at his twenty-five hundred feet, there were no impediments. Trooper – or Sergeant Lumpcik also said there were no adverse conditions.

{¶ 8} Trooper Cromer indicated that he had a speeding vehicle, you know, gave some identifying factors regarding color and location, followed that vehicle. Once Sergeant Lumpcik actually stopped that vehicle, Trooper Cromer confirmed that that was in fact the vehicle that he had clocked at the previously mentioned speeds.

{¶ 9} Sergeant Lumpcik testified there was moderate traffic on that day. The trooper – Trooper Cromer further testified that – I may have already said this but if not, I'll say it again, that he had clocked – he had checked before and after that day at the beginning and at the end of his shift and the timing devises were operating correctly.

{¶ 10} Trooper further testified that he observed, in addition to the speed violation, the vehicle ultimately being driven by Mr. Williams, who was

identified as the driver by Sergeant Lumpcik, go from the center lane to the left lane back to the center lane and pass at least five other vehicles. Trooper Cromer testified that after it had passed at least five vehicles, he quit counting, which is his standard procedure.

{¶ 11} Sergeant – I'm sorry, the trooper also identified that there no other similar vehicles that matched the vehicle that he was tracking and that there was no doubt in his mind that the vehicle that was stopped was in fact the vehicle that he had clocked speeding; and that vehicle was described as vista blue by the owner, Tammy Talbott.   (Tr. 59-61).

**{¶ 12}**  Defendant timely appealed to this court from his conviction and sentence for speeding.  The trial court stayed execution of sentence pending appeal.

FIRST ASSIGNMENT OF ERROR

**{¶ 13}** "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."

**{¶ 14}** Defendant complains that he was deprived of the effective assistance of counsel at trial.  A claim of ineffective assistance can apply when counsel is appointed by the court to represent an indigent defendant.  *Strickland v. Washington,* 468 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Defendant proceeded to trial pro se and was not represented by counsel.  Defendant was not constitutionally entitled to appointed counsel for a minor misdemeanor case where the sentence upon conviction cannot and does not result in the imposition of jail time.  *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *State v. Brandon*, 45 Ohio St.3d 85, 543 N.E.2d 501 (1989).

**{¶ 15}** Defendant's first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

{¶ 16} "APPELLANT DID NOT WILLINGLY WAIVE HIS RIGHT TO A SPEEDY TRIAL AND WAS FORCED BY THE COURT TO SIGN A TIME WAIVER IN ORDER TO RECEIVE DISCOVERY."

{¶ 17} Defendant argues that he did not voluntarily waive his speedy trial rights via the waiver form he executed and signed on December 20, 2010, but rather he was coerced into choosing between the discovery he wanted and a timely trial.   We disagree.

{¶ 18}   On Thursday December 16, 2010, just two business days before his trial was scheduled to begin on Monday, December 20, 2010, Defendant filed a lengthy discovery request seeking, among other things, the personnel records of the police officers involved in Defendant's case, all policies and procedures of the Ohio State Patrol regarding air surveillance of vehicle speed, all training records of the officers involved regarding air to ground surveillance, all records regarding calibration of the equipment used to determine speed, and all records regarding citations issued for speeding on the date of Defendant's offense.

{¶ 19} In order to accommodate Defendant's "eleventh hour" request for discovery, which was untimely per Crim.R. 16(M), the trial court explained to Defendant that he had two options.   Defendant could proceed to trial as scheduled on Monday, December 20, 2010, which would protect Defendant's right to be tried within the time required by R.C. 2945.71(A), that is, within thirty days after his arrest or service of summons on November 27, 2010.  Or, Defendant could waive his right to a speedy trial, in which case the trial court would order the State to provide Defendant with the discovery materials he was requesting to

the extent that material was discoverable under Crim.R. 16. Defendant made it clear to the court that he wanted his requested discovery materials and that he was fine with waiving his speedy trial rights. The record before us does not support Defendant's claim that he was pressured into waiving his speedy trial rights.

{¶ 20} Furthermore, because Defendant executed a written waiver of his speedy trial rights before the thirty days allowed for trial by R.C. 2945.71(A) had expired, no speedy trial violation occurred in this case.

{¶ 21} Defendant's second assignment of error is overruled.

THIRD ASSIGNMENT OF ERROR

{¶ 22} "SENTENCE IS IMPROPER DUE TO THE FACT THE DEFENDANT WAS NEVER CHARGED WITH RECKLESS DRIVING AND THEREFORE COULD NOT DEFEND AGAINST SUCH A FINDING BY THE TRIAL COURT."

{¶ 23} Defendant argues that the sentence the trial court imposed upon him was too harsh for the speeding offense he committed, and it therefore violated his rights to due process and equal protection. More specifically, Defendant complains about the following finding by the trial court which resulted in the suspension of Defendant's driver's license for six months:

> Based upon being 22 miles an hour over the speed limit, making a lane change from center to the left lane back to the center and passing at least five vehicles at that speed meets the legal definition of recklessness.
>
> *   *   *
>
> THE COURT: Okay. I will impose a fine of a hundred dollars plus court costs. Based upon the finding of recklessness, I will suspend your

operator's license for a period of six months.

{¶ 24} Defendant was charged with and found guilty of only one offense, speeding. A conviction for speeding in violation of R.C. 4511.21(D)(2) is a minor misdemeanor, R.C. 4511.21(P), for which the only penalty is a fine not exceeding one hundred and fifty dollars. Crim.R. 4.1(B); R.C. 2929.28(A)(2)(v). The trial court imposed a fine of one hundred dollars. That sentence is clearly authorized by law and is not contrary to law.

{¶ 25} Defendant complains however that the trial court was not authorized to suspend his driver's license for reckless operation because he was never charged with or convicted of that offense.

{¶ 26} R.C. 4510.15, formerly R.C. 4507.34, provides in relevant part:

{¶ 27} Whenever a person is found guilty under the laws of this state, or under any ordinance of any political subdivision of this state, of operating a motor vehicle in violation of any such law or ordinance relating to reckless operation, the trial court of any court of record, in addition to or independent of all other penalties provided by law, may impose a class five suspension of the offender's driver's or commercial driver's license or permit or nonresident operating privilege from the range specified in division (A)(5) of section 4510.02 of the Revised Code.

{¶ 28} A court's authority to suspend a driver's license under R.C. 4507.34, now R.C. 4510.15, may arise when a person has been charged with and convicted of speeding under R.C. 4511.21, without any charge of reckless operation being made under R.C. 4511.20, inasmuch as a law or ordinance prohibiting speeding is a prohibition "relating to reckless operation" of a motor vehicle within the meaning of R.C. 4507.34, now 4510.15. *State v.*

*Newkirk*, 21 Ohio App.2d 160, 255 N.E.2d 851 (5th Dist. 1968). See also: *State v. Secrest,* 9th Dist. Wayne No. 04CA0023, 2004-Ohio-4585; *State v. Short*, 2d Dist. Champaign No. 2003CA42, 2004-Ohio-5985.

**{¶ 29}** The evidence in this case, including the testimony of Trooper Cromer, demonstrates that while traveling twenty-two miles per hour over the speed limit, Defendant was weaving in and out of the center lane in order to pass at least five vehicles at that speed. That evidence is sufficient for the trial court to find for purposes of R.C. 4510.15, formerly 4507.34, that the particular conduct of Defendant constituting speeding in this case related to his reckless operation of the motor vehicle. Accordingly, the trial court had the authority to suspend Defendant's driver's license. R.C. 4510.15; *Newkirk; Secrest; Short*.

**{¶ 30}** Defendant's third assignment of error is overruled.

FOURTH ASSIGNMENT OF ERROR

**{¶ 31}** "FAILURE TO GRANT EXPERT WITNESS TO MEASURE DISTANCE BETWEEN STRIPES."

**{¶ 32}** Defendant argues that the trial court erred by denying his request for the appointment of an expert witness at State expense to measure the distance between the speed stripes on I-675 that are used by the Ohio State Patrol during aerial surveillance to calculate the speed of vehicles traveling on the roadway.

**{¶ 33}** As previously discussed in overruling Defendant's first assignment of error, Defendant was not entitled to appointed counsel or representation by the public defender in this minor misdemeanor case because the penalty upon conviction does not include the possibility of loss of liberty or jail time. Crim.R. 4.1(B); R.C. 120.16(A)(1); *Brandon*. For

that same reason, Defendant is likewise not entitled to expenses for such things as expert witnesses who are available to indigent defendants being represented by court appointed counsel or a public defender. R.C. 120.33(A).

**{¶ 34}** Defendant's fourth assignment of error is overruled.

FIFTH ASSIGNMENT OF ERROR

**{¶ 35}** "THE STATE OF OHIO FAILED TO PROVIDE A COMPLETE AND TIMELY DISCOVERY IN REGARDS TO RECORDS AND OTHER DOCUMENTATION WHICH END UP IN TESTIMONY."

**{¶ 36}** Defendant argues that the State failed to provide him with complete discovery.

**{¶ 37}** On Thursday, December 16, 2010, just two business days before Defendant's trial was scheduled to begin on Monday, December 20, 2010, Defendant filed a lengthy discovery request demanding records and materials that were not readily available. We previously identified those materials that Defendant requested in our disposition of Defendant's second assignment of error. The trial court addressed Defendant's discovery request and granted Defendant access to all of the materials he had requested, except for the personnel records of the officers involved in Defendant's case and the records of all speeding citations issued by the Ohio State Patrol during the month of November 2010, which were irrelevant and not discoverable under Crim.R. 16. The materials Defendant requested and the trial Court ordered be provided to Defendant were all made available and/or provided to Defendant by January 28, 2011. By his own admission at trial, Defendant neglected to retrieve some of the discovery material available to him. This record demonstrates that Defendant was provided with the discovery he requested and to which he was entitled.

{¶ 38} Defendant's primary concern seems to be that he was never provided any records in discovery relating to the measured distance between the speed marks on I-675 that the Ohio Highway Patrol aerial unit utilizes to determine vehicle speed. Trooper Cromer, a pilot in the aviation section, testified that he has personally measured the distance between the speed lines on the side of I-675 at mile marker eight to nine, and that they are 1,320 feet or 1/4 mile apart. No records or logs were made of those measurements however. Since no records exist, there was obviously nothing in that regard to provide to Defendant in discovery.

{¶ 39} Defendant's fifth assignment of error is overruled. The judgment of the trial court will be affirmed.

FROELICH, J., And HALL, J., concur.

Copies mailed to:

Ronald Lewis, Esq.
Anthony Williams
Hon. Michael K. Murry