OPINION
This is an accelerated appeal taken from a final judgment of the Chardon Municipal Court. Appellant, Randall Boughner, appeals from his convictions for aggravated menacing and resisting arrest following a trial by jury.
On November 7, 1997, deputies from the Geauga County Sheriff's Department responded to a dispatch regarding a damaged vehicle in the parking lot of a mobile trailer park. Upon arriving, the police discovered the vehicle parked in front of appellant's trailer. An officer knocked on the door to the residence. Appellant began to curse at the police, and he refused to open the door. As the confrontation continued, appellant brandished a shotgun and threatened to shoot any officer who entered the residence. Eventually, the police pried open the front door and attempted to place appellant under arrest. Appellant did not comply with the officers' orders and actively resisted their attempts to handcuff him. Consequently, the police resorted to using pepper spray to subdue appellant.
Appellant was charged with aggravated menacing in violation of R.C. 2903.21, resisting arrest in violation of R.C. 2921.33, and using a weapon while intoxicated in violation of R.C. 2923.15. Although the record does not contain an express judgment entry, the trial court apparently appointed the Geauga County Public Defender ("the Public Defender") to represent appellant based on his status as an indigent defendant. The Public Defender entered a notice of appearance on appellant's behalf on December 11, 1997.
The case was set for jury trial on April 2, 1998. One day prior to this, the Public Defender filed a motion for leave to withdraw as counsel for appellant. As grounds for the motion, the Public Defender asserted that he and appellant had irreconcilable differences regarding trial strategy. According to the motion, the Public Defender informed appellant of his intention to withdraw from representation.
On the following day, appellant, the Public Defender, and the prosecutor appeared before the trial court as previously scheduled. The trial court addressed various pretrial motions that were pending, including the Public Defender's request to withdraw from representation. Upon hearing his explanation, the trial court found good cause for allowing the Public Defender to withdraw from the case.
After allowing the withdrawal, the trial court told appellant that he had two options. First, appellant could declare that he wished to proceed without the benefit of an attorney, and the matter would then immediately proceed to trial that day. Second, appellant could request a continuance during which time he could retain his own attorney. Appellant indicated that he did not wish to proceed on his own. The trial court, therefore, granted appellant a two week continuance so that he could retain counsel.
The second pretrial hearing was held on April 16, 1998. Appellant attended, but he was still unrepresented by counsel. According to appellant, he requested that the trial court appoint substitute counsel in place of the Public Defender, but the trial court denied this motion. Although this proceeding was recorded, there was no audio on the videotape. Consequently, the court reporter was unable to transcribe what was said during the hearing.
In May 1998, the Supreme Court of Ohio assigned a visiting judge to preside over the case at bar. The matter ultimately proceeded to trial on June 11, 1998. Appellant defended himselfpro se. The jury convicted appellant of aggravated menacing and resisting arrest, while acquitting him of possessing a weapon while intoxicated.
The visiting judge immediately proceeded with sentencing. On the aggravated menacing conviction, the judge sentenced appellant to one hundred eighty days in jail and a $1,000 fine. Thirty days and $500 of the fine were suspended. On the resisting arrest charge, the judge sentenced appellant to one hundred eighty days in jail and a $1,000 fine, with half of the fine suspended. The judge further ordered the jail sentences to run concurrently.[1]
From this judgment, appellant filed a pro se notice of appeal with this court. Subsequent to the filing of the appeal, appellant found counsel to represent him. Through this counsel, appellant asserts the following assignments of error:
 "[1.] The Trial Court violated Appellant Randall Boughner's Sixth Amendment right to counsel when it failed to substitute counsel to replace assigned public defender R. Robert Umholtz.
 "[2.] The Trial Court violated Appellant Randall Boughner's constitutional right to due process by failing to provide him with a transcripts [sic] pursuant to Ohio Crim. R. 22 and Ohio Crim. R. 44.
 "[3.] The Trial Court violated Appellant Randall Boughner's constitutional right to due process by failing to provide a complete Trial Transcript."
 I.
In his first assignment of error, appellant posits that the trial court erred by not appointing a different attorney to represent him following the withdrawal of the Public Defender. According to appellant, the trial court effectively compelled him to proceed pro se at trial in the absence of a valid waiver of counsel, thereby violating his constitutional right to counsel.
The Sixth Amendment to the United States Constitution protects the right of criminal defendants to enjoy the benefits of legal counsel. It provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." Section 10, Article I of the Ohio Constitution contains an analogous provision which states that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel * * *."
It is uncontroverted that the Sixth Amendment grants a criminal defendant the right to have privately retained counsel represent the defendant at all stages of a criminal prosecution. The actual language of the Constitution, however, is silent on the question of whether an attorney must be appointed at governmental expense to represent an indigent defendant. As a result, the United States Supreme Court stepped in to answer this query.
Early on, the Court held that the right to appointed counsel extends to all federal felony prosecutions where the defendant is unable to retain counsel due to indigency. See Johnson v. Zerbst
(1938), 304 U.S. 458. Subsequently, in the landmark decision ofGideon v. Wainwright (1963), 372 U.S. 335, the Court determined that the Sixth Amendment guaranty of counsel for indigent defendants should be incorporated against the states through theFourteenth Amendment. Thus, the Sixth Amendment right to counsel was made applicable to felony prosecutions conducted in state courts.
Following Gideon, many state courts interpreted the Supreme Court's mandate as applying only to felony prosecutions. It was unclear whether the state had a concomitant duty under the Sixth
and Fourteenth Amendments to appoint counsel for indigent defendants charged with lesser offenses.
In the hope of clarifying the scope of the constitutional guaranty, the Supreme Court ruled that the Sixth Amendment right to counsel extends to misdemeanor cases which actually result in the imposition of a jail sentence. Argersinger v. Hamlin (1972),407 U.S. 25. In Argersinger, the Court stated that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." (Footnote omitted.) Id. at 37. In announcing this decision, the Court articulated the clear principle that no person may be deprived of his liberty if he has been denied the assistance of counsel as guaranteed by the Sixth Amendment.
Thus, it is unquestioned that an indigent defendant may not be sentenced to a term of imprisonment unless the state has afforded said defendant the right to the assistance of counsel. Indeed, the Supreme Court of Ohio has expressly adopted Argersinger as the governing standard in right to counsel cases. See State v.Wellman (1974), 37 Ohio St.2d 162, paragraph one of the syllabus.
It is also, however, abundantly clear that the right to counsel does not extend to all misdemeanor prosecutions. In Scott v.Illinois (1979), 440 U.S. 367, the Supreme Court reiterated thatArgersinger limited the constitutional right to appointed counsel in state criminal proceedings to cases in which imprisonment is actually imposed. Thus, the Constitution simply requires that no indigent criminal defendant be sentenced to a term of imprisonment unless the state has afforded the defendant the right to assistance from appointed counsel. The Sixth andFourteenth Amendments, however, do not similarly obligate a state trial court to appoint counsel for a defendant who is charged with a statutory offense for which imprisonment upon conviction is authorized, but not imposed.
In Scott, an indigent defendant was convicted of shoplifting without counsel having been appointed to represent him. Under the applicable Illinois law, the maximum penalty for first-time offenders was one year in jail, a $500 fine, or both. Despite being statutorily authorized to impose jail time, the trial court sentenced the defendant to only a $50 fine.
On appeal, the defendant unsuccessfully challenged the conviction based on his contention that the trial court was obligated under the Sixth and Fourteenth Amendments to provide him with counsel at state expense. In support of his position, the defendant argued that Argersinger stood for the proposition that a state must provide counsel whenever imprisonment is an authorized penalty under the relevant statute.
The United States Supreme Court granted certiorari in order to resolve the conflict among state and lower federal courts regarding the proper application of the Argersinger decision. Upon doing so, the Court upheld the judgment of the state court:
 "[W]e conclude today that Argersinger did indeed delimit the constitutional right to appointed counsel in state criminal proceedings. * * * [T]he central premise of Argersinger — that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment — is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel. * * * We therefore hold that the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense. (Footnote omitted and emphasis added.) Scott, 440 U.S. at 373-374.
The Court concluded that the defendant's constitutional right to counsel under the Sixth andFourteenth Amendments was not violated because he was only fined, rather than imprisoned. In the wake ofScott, there can no longer be any doubt that the right to counsel does not extend to misdemeanor prosecutionsin state court which result in no jail time for thedefendant. Rather, the Constitution only mandates that an indigent criminal defendant may not be sentenced to a term of imprisonment unless the state has afforded him the right to assistance of appointed counsel.
The Supreme Court of Ohio has correctly recognized this limitation on the right to counsel in misdemeanor prosecutions:
 "It is unquestioned that an indigent defendant may not be sentenced to a term of imprisonment unless the state has afforded said defendant the right to assistance of counsel. See Scott v. Illinois (1979), 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383; Argersinger v. Hamlin
(1972), 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 * * *.
 "This is not to say that counsel is required in all instances. Indeed, in Scott, supra, the court essentially held that uncounseled misdemeanor convictions are constitutionally valid if the offender is not actually incarcerated." (Emphasis added.) State v. Brandon (1989), 45 Ohio St.3d 85, 86.
It should be noted that the distinction drawn by the United States Supreme Court between the right to counsel in felony and misdemeanor prosecutions is clearly illustrated by the Ohio Rules of Criminal Procedure. Crim.R. 44(A) provides that where "a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right," unless the defendant knowingly, intelligently, and voluntarily waives his right to counsel. (Emphasis added.) Under Crim.R. 2(C), a serious offense is "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months."
Crim.R. 44(A) does not give the trial court any discretion when it comes to appointing counsel in cases involving a serious offense. Rather, the trial court must appoint counsel in the absence of a valid waiver.
Crim.R. 44(B) governs the appointment of counsel in petty offense cases. Pursuant to Crim.R. 2(D), a petty offense is "a misdemeanor other than serious offense." In petty offense prosecutions, Crim.R. 44(B) provides the following:
"(B) Counsel in petty offenses
 "Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel." (Emphasis added.)
In contrast to Crim.R. 44(A), Crim.R. 44(B) does not mandate the automatic appointment of counsel in petty offense cases. Instead, the appointment of counsel is left to the discretion of the trial court, but no sentence of confinement can be imposed on an unrepresented indigent defendant unless he knowingly, intelligently, and voluntarily waives the right to counsel. It has been noted that Crim.R. 44(B) "codifies the result in Argersinger, since the Rule does not permit the imprisonment of a defendant not represented by counsel." Katz Giannelli, Criminal Law (1996), Section 75.3, at 604.
Having clarified the scope of the constitutional right to counsel, we can now turn to the case sub judice. Appellant was tried and convicted of aggravated menacing and resisting arrest. Both of these misdemeanor offenses constituted "petty offenses" as that term is defined by Crim.R. 2(D). The visiting judge ordered appellant to serve concurrent one hundred eighty day jail sentences for each misdemeanor conviction.
The United States Supreme Court's holdings in Argersinger andScott and Crim.R. 44(B) governed appellant's right to counsel in the case at bar. Under this body of law, one of two scenarios had to have occurred in order to justify the imposition of jail time: (1) appellant had to be represented by counsel at trial; or (2) appellant must have knowingly, intelligently, and voluntarily waived the right to counsel. It is undisputed that appellant represented himself pro se during his jury trial. Thus, we turn our attention to the question of whether appellant executed a valid waiver of his right to counsel.
The Sixth Amendment, as made applicable to the states through the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation. State v. Gibson (1976), 45 Ohio St.2d 366, paragraph one of the syllabus. The defendant may proceed to defend himself only if he knowingly, intelligently, and voluntarily elects to waive the right to counsel. Id.; Faretta v.California (1975), 422 U.S. 806. In order to establish an effective waiver, the trial court must sufficiently inquire into whether the defendant truly understands the nature of the constitutional guaranty and knowingly relinquishes the right to be represented by counsel. Gibson, 45 Ohio St.2d at paragraph two of the syllabus.
Crim.R. 44(C) governs the procedure whereby a defendant may elect to waive the right to counsel. It provides:
"(C) Waiver of counsel
 "Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing."
 Crim.R. 22 mandates in pertinent part that "[i]n petty offense cases all waivers of counsel required by Rule 44(B) shall be recorded[.]" As stated earlier, the crimes with which appellant was charged constituted petty offenses under Crim.R. 2(D).
This court has previously held that the requirements of the Rules of Criminal Procedure are mandatory. See State v. Bayer
(1995), 102 Ohio App.3d 172, 179. Therefore, pursuant to Crim.R. 44 and 22, the waiver of counsel must take place in open court and must be recorded. Id. See, also, State v. Mascaro (1991),81 Ohio App.3d 214, 216; Garfield Hts. v. Brewer (1984), 17 Ohio App.3d 216,217; State v. Brown (May 2, 1997), Lake App. No. 96-L-026, unreported, at 2, 1997 WL 269316. Since all waivers of counsel must be made on the record in open court, a written waiver by itself is not sufficient. State v. Dyer (1996), 117 Ohio App.3d 92,96; Brewer, 17 Ohio App.3d at 217. The failure to comply with these procedural requirements is error. Dyer,117 Ohio App. 3d at 96.
As a general matter, the appellant must provide a transcript to the reviewing court which demonstrates the claimed error. In the absence of such a transcript, the reviewing court ordinarily assumes the regularity of the proceedings below.
Courts, however, are to indulge every reasonable presumption against the waiver of fundamental constitutional rights, including the Sixth Amendment right to counsel. Id. at 95; In re East
(1995), 105 Ohio App.3d 221, 224, citing Brewer v. Williams
(1977), 430 U.S. 387. For this reason, the waiver of the right to counsel must affirmatively appear on the record. Dyer,117 Ohio App. 3d at 95; Bayer, 102 Ohio App.3d at 179; Brewer,17 Ohio App. 3d at 217; Brown, 1997 WL 269316, at 2.
Indeed, it is well-settled that a waiver of the Sixth Amendment right to counsel may not be presumed from a silent record. Dyer,117 Ohio App.3d at 95; Bayer, 102 Ohio App.3d at 179. In this regard, the Supreme Court of Ohio has explicitly held that it "is impermissible" to presume waiver in the face of a silent record.Wellman, 37 Ohio St.2d 162, at paragraph two of the syllabus.
This court has previously held that the state bears the burden of proving that a waiver of counsel was knowingly, intelligently, and voluntarily made. Brown, 1997 WL 269316, at 2. The prosecution, in other words, must overcome the presumption against a valid waiver. This may require the prosecution to provide the relevant portion of the record wherein a given defendant waived the right to counsel.
In the case at bar, the record fails to demonstrate that the trial court complied with the requirements of Crim.R. 44 and 22. Nowhere in the record does it affirmatively appear that appellant entered a valid waiver of his right to be represented by counsel at trial.
During the April 2, 1998 hearing, the trial court granted the Public Defender's motion for leave to withdraw from the case. No issue was raised as to the propriety of this decision. Upon granting the motion, the trial court informed appellant that he could proceed pro se to a jury trial that day or, alternatively, the court could grant appellant a continuance for the purpose of allowing him to retain his own attorney. Given these two choices, appellant chose the latter.
At no point during the April 2, 1998 proceeding did appellant knowingly, intelligently, and voluntarily elect to waive the right to counsel. In fact, appellant expressed the opposite sentiment, to wit: he told the trial court that he did not wish to proceed on his own.
Two weeks later, on April 16, 1998, another pretrial hearing was conducted. Appellant appeared without an attorney, and the prosecutor attended on behalf of the state. As described earlier, the audio portion of this proceeding did not record properly on the videotape, thereby preventing the court reporter from being able to transcribe what transpired.
In his brief, appellant claims that he unsuccessfully moved the trial court to appoint substitute counsel in place of the Public Defender who had withdrawn. In its brief, the state confirms that the audio portion of this hearing was not recorded, but it does not address what was discussed by the parties. The parties did not attempt to submit an App.R. 9(C) statement of the evidence or an agreed statement of the case under App.R. 9(D).
The waiver of the right to counsel must affirmatively appear on the record. Without a transcript of the April 16, 1998 hearing or an App.R. 9(C) or 9(D) statement of the proceedings, this court is obligated to presume that appellant's right to representation was not waived. See Dyer, 117 Ohio App.3d at 96 (the right to representation could not be deemed waived when the tape recording of the trial was unintelligible).
At the outset of the June 11, 1998 trial, the visiting judge who had been assigned to preside made the following statement as he reviewed the procedural history of the case:
 "[T]he case was set for trial to today, and you were given a date certain to reappear with counsel and let the Court know if you had an attorney, and in the absence of your so appearance, * * * failure to appear with counsel, that the matter would be presumed to proceed with you representing yourself as a pro se."
The visiting judge never asked appellant on the record in open court whether he was knowingly, intelligently, and voluntarily waiving the right to counsel. Instead, the judge simply assumed that appellant was proceeding pro se based on his failure to appear with counsel on the morning of the trial. This was clearly insufficient to constitute a valid waiver of counsel.
This court has previously articulated that a waiver of counsel is knowing, intelligent, and voluntary only when the defendant is made aware of the dangers and disadvantages of self-representation such that the record establishes that the defendant knowingly made the choice with his eyes wide open. Bayer, 102 Ohio App.3d 172,179, citing State v. Doane (1990), 69 Ohio App.3d 638, 646-647. In this case, a valid waiver of the right to counsel does not affirmatively appear on the record. At no point during the transcribed portions of the April 2 and April 16, 1998 pretrial hearings or the June 11, 1998 trial did appellant knowingly, intelligently, and voluntarily waive his right to be represented by an attorney.
As described previously, one of two requirements had to be satisfied before appellant could be subjected to incarceration for the misdemeanor convictions, to wit: appellant either had to be represented by counsel at trial or he had to waive the right to counsel in a knowing, intelligent, and voluntary fashion. Neither circumstance was satisfied in the instant matter.
The question now presented is as follows: what is the proper course of action for an appellate court upon determining that a defendant was convicted and sentenced to jail for a petty offense when that defendant was not represented by counsel and did not execute a valid waiver of the right to such counsel?
In a petty offense case, Crim.R. 44(B) codifies the holding of the United States Supreme Court in Argersinger by providing that "no sentence of confinement may be imposed" upon a defendant who is unable to obtain counsel, unless the defendant executes a valid waiver of counsel. Given this language in Crim.R. 44(B), this court has previously held that a petty offender may not be sentenced to a term of imprisonment in the absence of a constitutionally sound waiver of counsel. Warren v. Smith (Dec. 8, 1995), Trumbull App. Nos. 95-T-5185 and 95-T-5187, unreported, at 2, 1995 WL 815339. See, also, State v. Hutcheson (Dec. 24, 1998), Trumbull App. No. 97-T-0211, unreported, at 2, 1998 WL 964567.
In Smith, the defendant was charged with the misdemeanor offenses of assault and aggravated menacing. On the original trial date, he appeared without counsel and indicated that his attorney could not be present because of a prior commitment. The trial court granted a continuance, but warned the defendant to make sure that his attorney was present the next time. When the matter came on for trial again, the defendant again appeared without counsel. Although there was no evidence in the record that the defendant ever waived his right to counsel, the judge proceeded with the trial. The defendant was convicted of both petty offenses, and the trial court sentenced him to one month in jail with five additional months suspended.
On appeal, this court began by correctly noting that Crim.R. 44(B) represents a codification of the rule in Argersinger to the effect that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial. After doing so, we vacated the defendant's term of imprisonment, but affirmed the misdemeanor convictions themselves.
When presented with a situation wherein a misdemeanant has been convicted of a petty offense without the benefit of counsel and without executing a valid waiver of counsel, numerous other appellate courts have reached exactly the same conclusion, to wit: although any period of confinement must be vacated pursuant toArgersinger and Crim.R. 44(B), the overall judgment of conviction is affirmed. See, e.g., Dyer, 117 Ohio App.3d at 96 (affirming convictions for the petty offenses of disorderly conduct and obstructing official business, but vacating the corresponding jail sentences imposed by the trial court); State v. Haag (1976),49 Ohio App.2d 268, 271 (affirming the defendant's conviction for a petty offense, but vacating the imprisonment portion of the sentence after expressly noting that Crim.R. 44(B) is merely a restatement of the rule set down in Argersinger); Cleveland v.Crable (Mar. 16, 1995), Cuyahoga App. No. 67073, unreported, at 4, 1995 WL 116951 (affirming the defendant's conviction for a petty offense, but vacating the jail portion of the sentence based on the trial court's failure to secure a valid waiver of the right to counsel).
Although these cases correctly applied Argersinger and Crim.R. 44(B), none contains a cogent explanation as to why the term of imprisonment is vacated, but the underlying conviction is affirmed. We will attempt to provide such an explanation.
In Argersinger, the United States Supreme Court expressly focused on the potential loss of liberty (i.e., jail or prison time) facing an unrepresented criminal defendant. In doing so, the Court specifically held that no imprisonment may be imposed unless the accused is represented by counsel or the accused executes a knowing, intelligent, and voluntary waiver of the right to counsel. In other words, a trial court can preserve jail or prison time as a sentencing option only by affording a defendant the opportunity to be represented by counsel.
In Scott v. Illinois, supra, the Court clarified exactly what it meant in Argersinger. The Court succinctly stated that the central premise of Argersinger is "that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment[.]" Scott, 440 U.S. at 373. The defendant in Scott
was not deprived of his constitutional right to counsel because he was only fined for the petty offense conviction. As a result, the Court affirmed his conviction and the criminal fine associated with the conviction.
Thus, the right to appointed counsel under the Sixth
and Fourteenth Amendments in state criminal proceedings is limited to cases that lead to actual imprisonment. Consequently, by vacating any term of confinementimposed on an unrepresented misdemeanant, any potentialviolation of the constitutional right to counsel isthereby eradicated. In other words, if the jail time is thrown out on appeal, then there is no cognizable violation of the Sixth Amendment right to counsel because, as the Supreme Court of Ohio has held, "uncounseled misdemeanor convictions are constitutionally valid if the offender is not actually incarcerated." Brandon, 45 Ohio St.3d at 86.
In light of Argersinger and Scott, it is clear that the denial of the assistance of counsel precludes the imposition of a penal sentence, but it does not bar the levying of a fine, nor does it affect the constitutionality of the underlying conviction. If an unrepresented defendant has been convicted and sentenced to jail for a petty offense and that defendant did not execute a valid waiver of the right to counsel, an appropriate course of action for an appellate court to take is simply to vacate any term of imprisonment, while affirming the conviction itself along with any associated fine.[2]
In the present case, therefore, we must vacate the concurrent six-month jail sentences imposed on appellant, but we affirm the monetary fines and the judgments of conviction for aggravated menacing and resisting arrest. The first assignment of error is well-taken, but only to the extent indicated.
 II.
In his second assignment of error, appellant contends that the trial court erred in failing to make a complete record of the April 16, 1998 pretrial hearing. This error refers to the defective videotape in which the audio was not properly recorded. In our analysis of the first assignment of error, this court concluded that we were obligated to presume that appellant's right to counsel was not waived in the absence of a transcript of the April 16, 1998 hearing or an App.R. 9(C) or 9(D) statement of the proceedings. Given our resolution of the prior assigned error, this assignment has been rendered moot. See App.R. 12(A)(1)(c).
 III.
In his third and final assignment of error, appellant asserts that the trial court erred by failing to make a complete record of the proceedings in his trial. Although the June 11, 1998 trial was videotaped, it is undisputed that a gap exists in the videotape. For some unknown reason, the testimony of several defense witnesses, closing arguments, and the instructions to the jury were not recorded. As a result, the state concedes that appellant only had access to a partial trial transcript.
Despite this, the state correctly points out that appellant failed to adhere completely to the Rules of Appellate Procedure. Upon the appeal of an adverse judgment, it is the duty of the appellant to ensure that the record, or whatever portions thereof are necessary for the determination of the appeal, are filed with the court of review. App.R. 10(A); Rose Chevrolet, Inc. v.Adams (1988), 36 Ohio St.3d 17, 19. Any lack of diligence on the part of the appellant to secure the transcript or other portion of the record "should inure to appellant's disadvantage rather than to the disadvantage of appellee." Rose Chevrolet,36 Ohio St. 3d at 19.
An appellate court reviewing a lower court's judgment indulges in a presumption of regularity regarding the proceedings below.Hartt v. Munobe (1993), 67 Ohio St.3d 3, 7. When parts of the record necessary to the appeal are omitted, there is nothing for the reviewing court to pass upon. In such a situation, the appellate court must presume the validity of the proceedings below and affirm the trial court's judgment. State v. Johnson (July 24, 1992), Lake App. No. 91-L-107, unreported, at 2, 1992 WL 276900.
In the instant case, appellant ordered a trial transcript from the court reporter. As it turned out, the transcript was only partially complete given the gap in the videotape recording. Appellant now complains about the incompleteness of the transcript.
Appellant, however, did not attempt to submit a statement of the evidence in lieu of a complete transcript under App.R. 9(C). Appellant failed to invoke the procedures of App.R. 9(C) to reconstruct what was said during that portion of the trial that was not recorded and to establish its importance. In the absence of an attempt to reconstruct the substance of the remarks and to demonstrate prejudice, any error may be considered waived. Statev. Mariano (June 20, 1997), Geauga App. No. 96-G-1996, unreported, at 1, 1997 WL 361007 (holding that any error could be considered waived since the appellant did not submit a narrative statement in lieu of a transcript); Thomas v. Hedge (Feb. 6, 1987), Portage App. No. 1707, unreported, at 1, 1987 WL 6235 (holding that a statement of evidence should have been filed in place of a transcript when a tape recording machine malfunctioned). See, also, State v. Brewer (1990), 48 Ohio St.3d 50, 61.
Since appellant failed to attempt to file an App.R. 9(C) statement of the evidence, we must presume the regularity of the proceedings that are absent from the videotape. The third assignment is without merit.
Based on the foregoing analysis, the first assignment of error is well-taken to the extent indicated. While appellant's convictions for aggravated menacing and resisting arrest are affirmed, we hereby modify the sentences by vacating the periods of confinement that were included within the sentencing entry. Accordingly, the judgment of the trial court is modified and affirmed as modified.
FORD, P.J., concurs.
O'NEILL, J., dissents with Dissenting Opinion.
[1] Upon sentencing appellant on June 11, 1998, the visiting judge established a $10,000 cash or surety appeal bond. A bonding company posted the bond on appellant's behalf four days later. It appears, therefore, that appellant was released on recognizance pending this appeal.
[2] In recognition of the principle of law set forth inArgersinger and Scott, the state concedes in its brief that if this court concludes that appellant did not knowingly, intelligently, and voluntarily waive his right to counsel, then a proper remedy is to vacate the term of imprisonment imposed upon him.
 DISSENTING OPINION