[Cite as *Columbus v. Davis*, 2021-Ohio-2114.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| City of Columbus, | : | No. 19AP-715 |
|  |  | (M.C. No. 2019 ERB-72135) |
|  | : | No. 19AP-716 |
|  |  | (M.C. No. 2019 ERB-71732) |
| Plaintiff-Appellee, | : | No. 19AP-717 |
| v. |  | (M.C. No. 2019 ERB-72276) |
|  | : | No. 19AP-718 |
| Jermaine Davis, |  | (M.C. No. 2019 ERB-71797) |
|  | : | No. 19AP-719 |
| Defendant-Appellant. |  | (M.C. No. 2019 ERB-71477) |
|  | : |  |
|  |  | (REGULAR CALENDAR) |
|  | : |  |
|  | : |  |

D E C I S I O N

Rendered on June 24, 2021

**On brief:** *Zachary M. Klein*, City Attorney, *Melanie R. Tobias*, Deputy Chief of Staff-Prosecution, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni.*

**On brief:** *Yeura Venters*, Public Defender, and *Ian J. Jones*, for appellant. **Argued:** *Ian J. Jones.*

APPEALS from the Franklin County Municipal Court

KLATT, J.

{¶ 1} In these consolidated appeals, defendant-appellant, Jermaine Davis, appeals from judgments of conviction and sentence entered by the Franklin County Municipal Court following bench trials on multiple charges arising from appellant's ownership of several dogs. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

{¶ 2} On May 7, 2019, appellant was charged in case No. 2019 ERB 71477 (docketed on appeal as 19AP-719) with two counts of failure to register and pay for a dog license in violation of R.C. 955.21, and two counts of violating a rabies quarantine order in violation of R.C. 955.39.

{¶ 3} On May 10, 2019, appellant was charged in case No. 2019 ERB 71797 (docketed on appeal as 19AP-718) with one count of failure to confine a dog on his premises in violation of R.C. 955.22(C), and two counts of failure to register and pay for a dog license in violation of R.C. 955.21.

{¶ 4} On June 2, 2019, appellant was charged in case No. 2019 ERB 71732 (docketed on appeal as 19AP-716) with four counts of violating a rabies quarantine order in violation of R.C. 955.39, one count of failure to confine a dog on his premises in violation of R.C. 955.22(C), and five counts of failure to register and pay for a dog license in violation of R.C. 955.21.[1]

{¶ 5} Also, on June 2, 2019, appellant was charged in case No. 2019 ERB 72135 (docketed on appeal as 19AP-715) with one count of permitting a dog to enter another's property while not under his direct control in violation of Columbus City Code ("C.C.C.") 2327.11(B).

{¶ 6} On July 14, 2019, appellant was charged in case No. 2019 ERB 72276 (docketed on appeal as 19AP-717) with one count of failure to confine a dog on his premises in violation of R.C. 955.22(C), five counts of failure to register and pay for a dog license in violation of R.C. 955.21, and five counts of violating a rabies quarantine order in violation of R.C. 955.39.

{¶ 7} In total, appellant was charged with 14 counts of failure to register in violation of R.C. 955.21, all unclassified misdemeanors, 11 counts of violating a rabies quarantine order in violation of R.C. 955.39, all minor misdemeanors, 3 counts of failure to confine in violation of R.C. 955.22, all unclassified misdemeanors, and one count of permitting a dog to enter another's property while not securely leashed or under his direct control in violation of C.C.C. 2327.11(B), a third-degree misdemeanor.

---

[1] The complaints issued on the five failure to register counts stated that the offenses occurred on May 2, 2019. At trial, the trial court, upon the prosecution's uncontested motion, amended the date the offenses occurred to June 2, 2019.

{¶ 8}    At the outset of the September 26, 2019 trial on 2019 ERB 71477, 71797, and 72276, appellant requested a continuance to "get a public defender." (Sept. 26, 2019 Tr., 2019 ERB 71477, at 5.) Appellant averred that he had been informed that he had to obtain counsel but had not done so because he had been ill and unable to work. The trial court averred that "at least for that misdemeanor three [in 2019 ERB 72135], I will ask the bailiff to notify the public defender's office that you're here this morning, that you wish to speak with them regarding representation." *Id.* at 6. The court then ordered a recess. The record does not reflect what transpired with regard to appellant's attempt to obtain legal representation. It appears that his efforts were unsuccessful, however, as the record reveals that appellant appeared pro se throughout the proceedings.

{¶ 9}    Following the recess, the trial court explained trial procedures to appellant in some detail. Appellant indicated that he understood the process. Thereafter, the court, noting that it was 3:00 p.m., averred that it intended to serially try 2019 ERB 71477, 71797, and 72276 that day. Appellant agreed to this procedure.

{¶ 10} The prosecution presented the following evidence in 2019 ERB 71477. Celestine Joyce Freeman Cross lives next door to appellant. On May 7, 2019, as she pulled into her driveway, one of appellant's dogs ran toward her car. Cross was hesitant to exit her car because the dog "wasn't on the chain * * * and kept kind of coming at me." *Id.* at 13. Cross noticed that a window in appellant's house was open and called out for help. After appellant's son retrieved the dog from Cross's driveway, she called animal control.

{¶ 11} Mary Dembiec, a deputy warden with the Franklin County Department of Animal Care and Control, responded to Cross's call. Dembiec observed two dogs tethered in appellant's backyard. Dembiec accessed the Franklin County Auditor's MATS database to determine if the dogs were registered to appellant. According to Dembeic, the MATS database provides the only means of establishing whether a dog is registered in Franklin County. The MATS search revealed that appellant had not registered any dogs. According to Dembiec, no system comparable to MATS tracks rabies vaccination records; thus, it is the owner's responsibility to provide proof of vaccination. Appellant was not at home and no one on behalf of appellant presented evidence that the dogs were registered or had been vaccinated for rabies.

{¶ 12}  Appellant testified that his dogs were not registered because he did not know he was required to do so.  He further averred that his dogs were vaccinated for rabies.  In support, appellant, without objection, accessed documentation on his cell phone regarding vaccination records for the dogs.  The trial court read the documentation into the record.  The documentation indicated that dogs named Scar and Diamond were due for rabies treatment on May 19, 2019.

{¶ 13}  Upon the evidence presented, the trial court found appellant guilty of two counts of failure to register and two counts of violating a rabies quarantine order.  Regarding the vaccination offenses, the trial court averred that "the documentation that you provided to the Court stating that Scar and Diamond are due for vaccinations on 5/19/19, this Court has no ability to tell whether or not Scar and Diamond are, in fact, the dogs at subject in this complaint.  I have no idea who Diamond and Scar are.  No evidence was provided that Diamond and Scar are the dogs * * * at subject in this case."  *Id.* at 41.  The trial court imposed a $25 fine on the failure to register offenses and ordered appellant to pay court costs of $25.  The trial court also ordered appellant to register and vaccinate the dogs within 30 days.

{¶ 14}  In 2019 ERB 71797, Cross testified that on May 10, 2019, appellant kept several dogs at his residence.  She identified photographs of two of appellant's dogs.  (State's Ex. A and B.)  On cross-examination, Cross acknowledged that appellant's dogs were tethered in appellant's backyard "most of the time."  (Sept. 26, 2019 Tr., 2019 ERB 71797, at 8.)

{¶ 15}  Steven Fletcher, a deputy warden with the Franklin County Department of Animal Care and Control, testified that on May 10, 2019, he responded to a complaint alleging that one of appellant's dogs was on a neighbor's property.  Fletcher observed two dogs tethered to cables in appellant's backyard.  One of the dogs was tethered to a cable long enough to allow it to reach approximately four feet into the neighbor's yard.  *Id.* at 11-12.  Fletcher's MATS search revealed that no dogs were registered to appellant.

{¶ 16}  Appellant testified that the dog at issue was tethered to a cable in an effort to keep it from accessing the neighbor's yard.  However, he acknowledged that the dog "might have got over * * * on the neighbor's side."  *Id.* at 19.

{¶ 17} Upon the evidence presented, the trial court found appellant guilty of one count of failure to confine and two counts of failure to register. The trial court imposed a $75 fine (without specifying on which offense(s) the fine was imposed) and ordered appellant to pay court costs of $25.

{¶ 18} At the outset of the proceedings in 2019 ERB 72276, the trial court, upon the prosecution's motion, dismissed the five counts charging appellant with violating a rabies quarantine order. Thereafter, the prosecution presented the following evidence on the remaining failure to confine and failure to register counts.

{¶ 19} Cross testified that on July 14, 2019, she was standing in her driveway when one of appellant's dogs charged at her and "hit [her] right dead in the side, full blast." (Sept. 26, 2019 Tr., 2019 ERB 72276, at 7.) Appellant's son was standing in Cross's driveway and eventually coaxed the dog into appellant's backyard. Cross called the police, who, in turn, called animal control.

{¶ 20} Bradley Kyser, a deputy warden with the Franklin County Department of Animal Care and Control, responded to the scene. He observed two dogs in appellant's backyard. Kyser's MATS search revealed no dog registrations issued to appellant.

{¶ 21} On cross-examination, appellant asked Kyser why he was charged with five counts of failure to register when Kyser had observed only two dogs on appellant's property. At this point, upon motion by the prosecution, the trial court dismissed three of the failure to register charges.

{¶ 22} Appellant's wife, Jakishma Davis, testified that on the day of the incident, she asked her son "if one of our dogs had got loose that day or if anything happened." *Id.* at 19. He told his mother he put the dogs on cables in the backyard and they were never loose.

{¶ 23} Upon the evidence presented, the trial court found appellant guilty of one count of failure to confine and two counts of failure to register. The trial court imposed a $50 fine (without specifying on which offense(s) the fine was imposed) and ordered appellant to pay court costs of $25.

{¶ 24} On October 7, 2019 ERB 72135 and 71732, were tried jointly to the court. At the outset of the proceedings, upon motion of the prosecution, the trial court dismissed the charges of violating a rabies quarantine order and failure to confine in 2019 ERB 71732. Thereafter, the prosecution presented the following evidence on the remaining five failure

to register counts in 2019 ERB 71732 and the single count of permitting a dog to enter another's property while not securely leashed or under his control in 2019 ERB 72135.

{¶ 25} On June 2, 2019, appellant's next-door neighbor, Toia Ocansey, opened her garage door and encountered one of appellant's dogs on her driveway.  Although the dog was tethered, its aggressive actions prevented Ocansey from accessing her garage; she immediately called animal control.  Upon responding to Ocansey's complaint, Deputy Warden Dembiec observed five dogs tethered in appellant's backyard; one of the dogs was tethered to Ocansey's fence, which allowed it entrance to Ocansey's property through a row of hedges that bordered the two properties.  Thereafter, appellant came outside.  He denied that any of his dogs had been loose.  According to Ocansey, appellant was "belligerent [and] rude" to her and Dembiec.  (Oct. 7, 2019 Tr., 2019 ERB 71732 and 72125, at 27.)  Dembiec took photographs of all five dogs, including the one she observed on Ocansey's property. (State's Ex. 1-7.)  Pursuant to a MATS search, Dembiec confirmed that the five dogs were not registered.  Both Dembiec and Ocansey testified that appellant was not in control of the dog that entered Ocansey's property.

{¶ 26} Appellant denied that he was disrespectful to Ocansey and Dembiec during the June 2, 2019 encounter.  He conceded that he had not registered his five dogs.

{¶ 27} Upon the evidence presented, the trial court found appellant guilty on all charges.  In 2019 ERB 72135, the trial court imposed a $500 fine and court costs, ordered appellant to serve 60 days in jail, and suspended 40 days conditioned upon completion of two years' probation. The trial court ordered the 20-day sentence to be served immediately. The trial court imposed no sentence on the failure to register counts in 2019 ERB 71732.

{¶ 28} The trial court memorialized appellant's convictions and sentences in judgment entries filed September 27, 2019 (2019 ERB 71477, 71797, and 72276), and October 8, 2019 (2019 ERB 72135 and 71732).

{¶ 29} In a timely appeal, appellant advances four assignments of error for review[2]:

> [I].  Mr. Davis was denied his right to counsel under the Sixth Amendment to the United States Constitution and Article I, Section 10 of [t]he Ohio Constitution, as he was not properly

---

[2] By journal entry filed October 22, 2019, this court sua sponte consolidated the appeals docketed under case Nos. 19AP-715, 19AP-716, 19AP-717, 19AP-718, and 19AP-719.

advised of his right to counsel, nor did he knowingly, intelligently and voluntarily waive his right to counsel.

[II]. Mr. Davis was denied his right to a jury trial under the Sixth Amendment to the United States Constitution and Article I, Section 5 of the Ohio Constitution and he did not knowingly, intelligently and voluntarily waive his right to a trial by jury.

[III]. Mr. Davis's convictions were against the manifest weight of the evidence.

[IV]. Insufficient evidence was presented to sustain Mr. Davis's convictions.

{¶ 30} In his first assignment of error, appellant argues that he was denied the right to court-appointed counsel under the United States and Ohio Constitutions.[3]

{¶ 31} "The Sixth Amendment [to the United States Constitution], as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson*, 45 Ohio St.2d 366, paragraph one of the syllabus (1976), citing *Faretta v. California*, 422 U.S. 806 (1975). "Absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *State v. Wellman*, 37 Ohio St.2d 162 (1974), paragraph one of the syllabus, following *Argersinger v. Hamlin*, 407 U.S. 25 (1972).

{¶ 32} "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *Gibson* at paragraph two of the syllabus. A valid waiver must be made with an understanding of the nature of the charges, the statutory offenses included within the charges, the range of permissible punishments, possible defenses to the charges and mitigating circumstances, and all other facts essential to a broad understanding of the entire matter. *Id.* at 376, citing *Von Moltke v. Gillies*, 332 U.S.

---

[3] Although appellant's assignment of error purports to assert a constitutional violation under the Ohio Constitution, he does not present any arguments under the Ohio Constitution. Thus, we have no occasion to consider the protections afforded under that document.

708, 724 (1948). "Presuming a waiver of the Sixth Amendment right of an accused to the assistance of counsel from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Wellman* at paragraph two of the syllabus, following *Carnley v. Cochran*, 369 U.S. 506 (1962).

{¶ 33} Crim.R. 44 also address the appointment and waiver of counsel. Crim.R. 44(B) provides that "[w]here a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent the defendant. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, the defendant knowingly, intelligently, and voluntarily waives assignment of counsel." Crim.R. 44(C) states that "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing." Crim.R. 22 provides that "in petty offense cases all waivers of counsel required by Rule 44(B) shall be recorded." "At the very least, then, any waiver of counsel must be made on the record in open court, and in cases involving serious offenses where the penalty includes confinement for more than six months, the waiver must also be in writing and filed with the court." *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, ¶ 24.

{¶ 34} Appellant argues that the trial court did not properly advise him of his right to counsel and he did not knowingly, voluntarily, and intelligently waive such right. Appellant maintains that the right to appointed counsel attached to "all the counts which were jailable and which were enhanceable to become jailable offenses." (Appellant's Brief at 26.) Appellant identifies the "jailable" offense as the third-degree misdemeanor violation of C.C.C. 2327.11(B) (permitting an animal to enter another's property while not under the owner's direct control) and the "enhanceable to become jailable offenses" as the unclassified misdemeanor violations of R.C. 955.21 (failure to register).[4]

---

[4] For purposes of Crim.R. 44, appellant's failure to register offenses are considered "petty offenses." A "petty offense" is defined as "a misdemeanor other than a serious offense," i.e., other than a misdemeanor "for which the penalty prescribed by law includes confinement for more than six months." Crim.R. 2(D) and (C). The maximum potential jail term for failure to register is "not more than 30 days." R.C. 955.21 and 955.99(E)(1).

{¶ 35} The city does not claim that the trial court advised appellant of the right to court-appointed counsel or obtained from appellant a knowing, voluntary, and intelligent waiver of such right. Rather, the city contends that because the right to court-appointed counsel extends only to offenses that may result in imprisonment, and because the failure to register offenses as charged carried no potential for imprisonment, the trial court had no obligation to advise appellant of the right to counsel or to obtain a waiver of such right on those offenses. The city further maintains that this court need not address the right to counsel issue as to the third-degree misdemeanor violation of C.C.C. 2327.11(B), as it concedes (pursuant to its response to the third assignment of error) that appellant's conviction on that offense should be reversed and the matter remanded to the trial court for a new trial based upon the trial court's failure to conduct a jury trial on that offense. In his reply brief, appellant urges this court to address the right to counsel issue on the third-degree misdemeanor violation of C.C.C. 2327.11(B) as well as the unclassified misdemeanor violations of R.C. 955.21.

{¶ 36} Because the city concedes that the trial court's failure to conduct a jury trial on the third-degree misdemeanor violation of C.C.C. 2327.11(B) was improper, thus warranting a new trial, we decline to address the merits of the right to counsel issue, as any decision rendered on that issue would amount to an improper advisory opinion. *See State v. Anderson*, 10th Dist. No. 06AP-174, 2006-Ohio-6152, ¶ 50, citing *State v. Hardesty*, 4th Dist. No. 06CA-1, 2006-Ohio-5272, ¶ 10.

{¶ 37} Thus, the issue before this court resolves to whether appellant was entitled to court-appointed counsel on the failure to register offenses under R.C. 955.21. As noted above, appellant argues that the right to counsel attached to these offenses because they are "enhanceable to become jailable offenses." Appellant asserts this proposition without further elaboration or citation to any legal authority. In its brief, the city surmises that appellant's argument is premised upon R.C. 955.99(E)(1), which provides that an initial violation of R.C. 955.21 subjects an offender to a fine of $25 to $100; however, on each subsequent offense, the offender may be fined $75 to $250 and imprisoned for up to 30 days. In his reply brief, appellant offers no further insight into his enhancement argument.

{¶ 38} Pursuant to the panel's inquiry during oral argument, the issue was discussed at much greater length. Counsel for appellant acknowledged that he had not discovered

any case law to support his argument. Counsel for the city argued that because none of the complaints issued on the failure to register counts included the penalty-enhancing language set forth in R.C. 955.99(E)(1), appellant could not have been subject to imprisonment for violations of R.C. 955.21. Counsel for appellant agreed with the city's assertion in this regard. Following oral argument, counsel for the city filed a notice of supplemental authority directing this court to R.C. 2945.75(A)(1), which provides that when the presence of one or more additional elements makes an offense one of more serious degree, the complaint either shall state the degree of the offense that the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise, such complaint is effective to charge only the least degree of the offense. Counsel did not cite any case law interpreting or applying R.C. 2945.75(A)(1).

{¶ 39} Our independent research leads us to conclude that the city correctly asserts that appellant could not have been subject to incarceration for violations of R.C. 955.21 because the complaints failed to allege the penalty-enhancing language set forth in R.C. 955.99(E)(1). In a somewhat analogous case involving R.C. 4511.19, this court stated, " '[t]o enhance a penalty for second and subsequent offenses, the prior conviction or convictions must be alleged in the complaint.' " *State v. Thornton*, 10th Dist. No. 86AP-79 (June 24, 1986), quoting *State v. Crawley*, 10th Dist. No. 84AP-640 (Dec. 31, 1984), and citing R.C. 2945.75. Here, the complaints alleged unclassified misdemeanor violations of R.C. 955.21 and did not allege prior convictions which could have enhanced the penalty for second and subsequent offenses to imprisonment for up to 30 days. Pursuant to R.C. 2945.75, because the complaints did not allege prior convictions for failure to register, the complaints were effective to charge only the least degree of failure to register, which subjects an offender only to a fine and not imprisonment.

{¶ 40} We further note that in *State v. Brandon*, 45 Ohio St.3d 85 (1989), the Supreme Court of Ohio observed that in *Scott v. Illinois*, 440 U.S. 367 (1979), the United States Supreme Court "essentially held that uncounseled misdemeanor convictions are constitutionally valid if the offender is not actually incarcerated." *Id.* at 86, citing *Scott*. Here, appellant was not sentenced to imprisonment for any of his failure to register convictions; accordingly, pursuant to *Scott,* his uncounseled misdemeanor convictions are constitutionally valid.

{¶ 41}  The first assignment of error is overruled.

{¶ 42}  In his second assignment of error, appellant contends that he was denied the right to a jury trial under the United States and Ohio Constitutions.[5]  Appellant asserts that the violation of his constitutional right to trial by jury rendered the trial court without jurisdiction to try him on the charges for which he was entitled to a jury trial.  Consequently, appellant argues, "[h]is incarceration was unlawful, the suspended incarceration sentence was unlawful, and his convictions should be reversed."  (Appellant's Brief at 34.)  Although appellant employs the plural terms "charges" and "convictions," appellant argues only that his incarceration and suspended incarceration was unlawful; accordingly, we construe appellant's constitutional argument as challenging only the conviction which resulted in the imposition of a 60-day jail term, i.e., the third-degree misdemeanor violation of C.C.C. 2327.11(B).

{¶ 43}  The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees an accused the right to trial by jury.  *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, ¶ 6, citing *Duncan v. Louisiana*, 391 U.S. 145 (1968).

{¶ 44}  Crim.R. 23 also addresses trial by jury.  Crim.R. 23(A) provides that "[i]n petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial.  Such demand must be made in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later."

{¶ 45}  R.C. 2945.05 requires a waiver of a jury trial to be written, signed by the defendant, and filed in the record.  "Where a defendant in a petty offense case has a right to a trial by jury and pleads not guilty and demands a jury trial in the manner provided by Crim.R. 23(A), it must appear of record that such defendant waived this right in writing in the manner provided by R.C. 2945.05, in order for the trial court to have jurisdiction to try the defendant without a jury."  *State v. Tate*, 59 Ohio St.2d 50 (1979), syllabus.

{¶ 46}  Here, appellant was charged with permitting an animal to enter upon the property of another when not securely leashed or under his direct control.  C.C.C.

---

[5] Although appellant's assignment of error purports to assert a constitutional violation under the Ohio Constitution, he does not present any arguments under the Ohio Constitution.  Thus, we have no occasion to consider the protections afforded under that document.

2327.11(B).   If the animal is a dog, a violation of C.C.C. 2327.11(B) is a third-degree misdemeanor.  C.C.C.  2327.11(C).  Third-degree  misdemeanors  are  punishable  by imprisonment of not more than 60 days and a fine of not more than $500.   C.C.C. 2301.25(B)(3) and (C)(3).  Because the potential penalty for a third-degree misdemeanor violation of C.C.C. 2327.11 includes the possibility of imprisonment, appellant had a right to a jury trial. R.C. 2945.17(A).

{¶ 47}  Once a defendant in a petty offense case requests a jury trial, the trial court may not conduct a bench trial "unless the defendant makes a knowing, voluntary, and intelligent waiver of his right to a jury trial, and that waiver is made part of the record pursuant to R.C. 2945.05.  *State v. Pflanz*, 135 Ohio App.3d 338, 339 (1st Dist.1999), citing *Tate.*  Further, " '[t]he fact that appellant did not object to the trial court proceeding with a bench trial is of no matter.  Silent acquiescence to a bench trial is not sufficient to constitute a waiver of a defendant's right to jury trial.' "  *State v. Dengg*, 11th Dist. No. 2008-P-0063, 2009-Ohio-4101, ¶ 25, quoting *State v. Taylor*, 11th Dist. No. 98-P-0022 (May 11, 2001), citing *Tate* at 53.

{¶ 48} The  record  reveals  that  appellant  filed  a  timely  written  jury  demand. Consequently, he could not be tried without a jury unless he filed a written waiver of the jury demand in accordance with R.C. 2945.05.   Both parties agree, and the record demonstrates, that appellant never waived his jury demand.  Indeed, the city concedes that appellant had a right to be tried by a jury on the C.C.C. 2327.11 offense and did not waive that right; as such, his conviction for that offense must be reversed and the matter remanded for a new trial.

{¶ 49}  The second assignment of error is sustained.

{¶ 50}  In his third and fourth assignments of error, appellant contends that his convictions are against the manifest weight of the evidence and are not supported by sufficient evidence, respectively.   Because appellant presents the same arguments in support of both assignments of error, we will consider them together.  We further note than appellant does not set forth a separate argument under each of the five case numbers at issue in these consolidated appeals.  Rather, appellant groups his multiple convictions for violations of the same statute together and sets forth a single argument under each grouping.

{¶ 51} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). "The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rationale trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A sufficiency-of-the-evidence challenge tests whether the prosecution's case is legally adequate to prove all elements of the charged offense. *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Our evaluation of the sufficiency of the evidence raises a question of law and does not permit us to weigh the evidence. *Id.*

{¶ 52} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*, citing *Martin* at 175.

{¶ 53} We first address appellant's argument related to his convictions in 2019 ERB 71477 for violations of R.C. 955.39. That statute provides that "[n]o person shall violate a rabies quarantine order issued under section 955.26 of the Revised Code." Appellant contends that the prosecution failed to present evidence of a rabies quarantine order issued under R.C. 955.26. The city concedes as much; accordingly, appellant's convictions in 2019 ERB 71477 for violating R.C. 955.39 must be vacated.

{¶ 54} We next consider appellant's argument regarding his conviction in 2019 ERB 72135 for a violation of C.C.C. 2327.11(B). That ordinance provides that "[n]o owner of any animal, shall permit the animal to enter upon any property not that of his owner, when it is not securely leashed or under direct control." Appellant asserts, without any

explanation, citation to the record, or reliance on case law, that "[i]t was against the manifest weight of the evidence to find that Mr. Davis, being the owner of the dog, allowed the animal to enter another property when the dog was not under his direct control" and that "[i]nsufficient evidence was presented to prove that Mr. Davis, being the owner of a dog, allowed the animal to enter another property when the dog was not under his direct control. (Appellant's Brief at 41, 43.) Our resolution of the second assignment of error renders appellant's argument moot, as we have previously determined that his conviction for violation of C.C.C. 2327.11(B) must be reversed and the matter remanded for a new trial.

{¶ 55} We next address appellant's argument as to his convictions in 2019 ERB 71477, 71797, 72276, and 71732 for violations of R.C. 955.21. That statute provides in part that "[n]o owner, keeper, or harborer of a dog more than three months of age * * * shall fail to file the application for registration required by section 955.01 of the Revised Code, nor shall he fail to pay the legal fee therefor."

{¶ 56} R.C. 955.01 requires a dog owner to register a dog "in the office of the county auditor of the county in which the dog is kept or harbored[.]" R.C. 955.01(A)(1). The owner must provide information about the dog, such as breed and age, and state the name and address of the owner. *Id.* The owner must also pay a registration fee. *Id.* Once the owner registers the dog and pays the fee, the county auditor delivers a certificate of registration to the dog owner. R.C. 955.07. The county auditor is required to keep records of all certificates of registration issued. *Id.*

{¶ 57} Appellant does not contend that he was not the owner of the dogs at issue or that they were under three months of age. Rather, appellant maintains that "[i]t was against the manifest weight of the evidence to find" and that "[i]nsufficient evidence was presented to prove" that he "both failed to file the application and failed to pay the legal fee as required by R.C. [955.21]." (Appellant's Brief at 40, 43.) Specifically, appellant claims that "[t]he absence of a record in the databases referenced by the animal control officers does not constitute proof that Mr. Davis failed to file an application and failed to pay a legal fee for the registration of his dogs." (Appellant's Brief at 40, 43.) We disagree. As noted above, appellant was required to register his dogs with the Franklin County Auditor because he keeps or harbors his dogs in Franklin County. R.C. 955.01(A). A county auditor is charged

with keeping records of dog registration certificates issued. R.C. 955.07. Dembiec testified that the Franklin County Auditor's MATS database provides the only means for determining whether a dog is registered. Appellant does not explain why the absence of a record in the MATS database does not constitute proof that he failed to register his dogs, nor does he provide any legal support for this proposition.

{¶ 58} In *State v. Turic*, 2d Dist. No. 21453, 2006-Ohio-6664, the court upheld the defendant's convictions under R.C. 955.21 based on an animal control officer's testimony that the owner admitted owning the dogs, provided no proof of registration, and the animal control officer independently found no evidence that the dogs had been registered. *Id.* at ¶ 19. Here, Animal Control Officers Dembiec, Fletcher, and Kyser testified that the Franklin County Auditor's MATS system tracks dog registrations, and that upon accessing that system, they found no evidence that appellant's dogs had been registered. Further, appellant admitted at trial that he owned the dogs and did not register them. Based upon the testimony at trial, we find that the prosecution established beyond a reasonable doubt that appellant failed to register his dogs and pay the required fee as required by R.C. 955.21, and that the trial court did not lose its way in finding appellant guilty of the offenses. *Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus; *Thompkins,* 78 Ohio St.3d 380 at 387.

{¶ 59} Finally, we address appellant's argument regarding his convictions in 2019 ERB 71797 and 72276 for violations of R.C. 955.22(C), which prohibits a dog owner from failing to "keep the dog physically confined or restrained upon the premises of the owner * * * by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape" or, alternatively, from failing to "[k]eep the dog under the reasonable control of some person." R.C. 955.22(C)(1) and (2). Appellant asserts, without any explanation, citation to the record, or reliance on case law, that "[i]t was against the manifest weight of the evidence to find that Mr. Davis failed to physically confine a dog on his premises" and that "[i]nsufficient evidence was presented to prove that Mr. Davis failed to physically confine a dog on his premises." (Appellant's Brief at 41, 43.)

{¶ 60} In 2019 ERB 71797, Fletcher testified that he observed two dogs tethered to cables on appellant's property; one of the dogs was tethered to a cable long enough to permit it to reach approximately four feet into the neighbor's yard. Appellant testified

that he tethered the dog in an effort to keep it from accessing the neighbor's yard; however, he admitted that the dog "might have got over * * * on the neighbor's side." Based upon the testimony at trial, we find that the prosecution established beyond a reasonable doubt that the dog was neither "confined and restrained" as required by R.C. 955.22(C)(1), nor under the "reasonable control of some person" as required by R.C. 955.22(C)(2), and that the trial court did not lose its way in finding appellant guilty of the offense. *Jenks; Thompkins.*

{¶ 61} In 2019 ERB 72276, Cross testified that one of appellant's dogs "hit me right dead in the side, full blast" as she stood in her driveway. Appellant's wife disputed Cross's account of the incident, stating that her son told her that the dogs were never loose. Based upon the testimony at trial, we find that the prosecution established beyond a reasonable doubt that the dog that charged at and struck Cross was neither "confined and restrained" as required by R.C. 955.22(C)(1), nor under the "reasonable control of some person" as required by R.C. 955.22(C)(2), and that the trial court did not lose its way in finding appellant guilty of the offense. *Jenks; Thompkins.*

{¶ 62} Appellant's third and fourth assignments of error are sustained in part, moot in part, and overruled in part.

{¶ 63} For the foregoing reasons, the judgments of the Franklin County Municipal Court are affirmed in part and reversed in part. Appellant's convictions in 2019 ERB 71797 and 72276 for violations of R.C. 955.22 and in 2019 ERB 71477, 71797, 72276, and 71732 for violations of R.C. 955.21 are affirmed. Appellant's convictions in 2019 ERB 71477 for violations of R.C. 955.39 are vacated. Appellant's conviction in 2019 ERB 72135 for violation of C.C.C. 2327.11(B) is reversed, and that cause is remanded to the trial court for further proceedings in accordance with law and this decision.

*Judgments affirmed in part, reversed in part,*
*and case remanded.*

BEATTY BLUNT and MENTEL, JJ., concur.

————————————